512 A.2d 683

**Marion PRIESTER and Arietta Priester, Appellants,**

v.

**FAYETTE COUNTY CHILDREN AND YOUTH SERVICES.**

Superior Court of Pennsylvania.

Argued Jan. 28, 1986.

Filed July 7, 1986.

John S. Cupp, Jr., Connellsville, for appellants.

Mary W. Terry, Uniontown, for appellee.

Before CIRILLO, President Judge, and DEL SOLE and BECK, JJ.

CIRILLO, President Judge:

This is an appeal from a final judgment dismissing appellant's complaint for custody due to lack of standing. We affirm.

The basic facts of this case are undisputed. Appellants, Marion and Arietta Priester, seek custody of Karen Ann Bowers, a minor child. Appellee, Fayette County Children and Youth Services, initially approved appellants as foster parents and placed the minor child in their home for approximately two years.

Pursuant to a court order, however, appellee removed the minor child from the foster home. Appellee placed the child in another foster home in which the child's brother resided. Appellants have not had custody of the child since that time. Appellants claim no relation to the child by blood or marriage. The natural mother of the child died before the final judgment was entered by the trial court. The location

of the child's natural father is unknown. Appellee has declined appellants' request for custody of the child.

The sole issue presented for our review is: Whether appellants, former foster parents who no longer have possession of the child, lack standing to pursue an action for custody? We answer in the affirmative.

Foster care has been defined as a " 'child welfare service which provides substitute family care for a planned period for a child when his own family cannot care for him for a temporary or extended period, and when adoption is neither desirable nor possible.' " *Smith v. Organization of Foster Families*, 431 U.S. 816, 823, 97 S.Ct. 2094, 2099, 53 L.Ed.2d 14 (1977), citing Child Welfare League of America, Standards for Foster Family Care Service 5 (1959).

The distinctive features of foster care are first, " 'that it is care in a *family*, it is noninstitutional substitute care,' " and second, " 'that it is for a *planned* period—either temporary or extended. This is unlike adoptive placement, which implies a *permanent* substitution of one home for another.' " 431 U.S. at 824, 97 S.Ct. at 2099, citing A. Kadushin, Child Welfare Services 355 (1967). (Emphasis in original).

In *Commonwealth ex rel. Ebel v. King*, 162 Pa.Super. 533, 58 A.2d 484 (1948), this Court held that foster parents did not possess standing to bring a habeas corpus proceeding to obtain legal custody of a three year old boy that had been placed in their home for a period of approximately one and one-half years prior to being removed to another foster home. *See* Annot., 21 A.L.R.4th 535, 555 (1983). More recently, in the case of *In Re Adoption of Crystal D.R.*, 331 Pa.Super. 501, 480 A.2d 1146 (1984), we ruled that foster parents have no standing to file a petition for termination of parental rights. We interpreted 23 P.C.S. § 2512,[1] which

---

1. **§ 2512. Petition for involuntary termination**
   (a) **Who may file.**—A petition to terminate parental rights with respect to a child under the age of 18 years may be filed by any of the following:
   (1) Either parent when termination is sought with respect to the other parent.
   (2) An agency.

enumerates those who are eligible to petition for involuntary termination of parental rights, to exclude foster parents.

In the case *sub judice*, however, the foster parents seek custody as opposed to termination of parental rights. We need not address the distinction between these two proceedings. The natural parents play no role in our analysis; the mother is deceased and the location of the father is unknown.

The singular focus of our review is one of standing for foster parents who seek to gain custody of a foster child formerly in their care. By its very nature, the foster parent/foster child relationship " 'implies a warning against any deep emotional involvement with the child since under the given insecure circumstances this would be judged as excessive.' " *In Re Adoption of Crystal D.R.*, 331 Pa.Super. 501, 510, 480 A.2d 1146, 1151 (1984), quoting J. Goldstein, A. Freud, and A. Solnit, *Beyond the Best Interests of the Child* 24 (1973).

This Court has previously ruled that the "overriding goal in any child custody matter is to render a decision encompassing the 'best interests' of the child." *Parker v. MacDonald*, 344 Pa.Super. 552, 559, 496 A.2d 1244, 1247–48 (1985), citing *Gonzalez v. Gonzalez*, 337 Pa.Super. 1, 486 A.2d 449 (1984). This term has been defined as including the child's physical, intellectual, moral and spiritual well-being. *Hartman v. Hartman*, 328 Pa.Super. 154, 476 A.2d

(3) The individual having custody or standing in loco parentis to the child and who has filed a report of intention to adopt required by section 2531 (relating to report of intention to adopt).

(b) **Contents.**—The petition shall set forth specifically those grounds and facts alleged as the basis for terminating parental rights. The petition filed under this section shall also contain an averment that the petitioner will assume custody of the child until such time as the child is adopted. If the petitioner is an agency it shall not be required to aver that an adoption is presently contemplated nor that a person with a present intention to adopt exists.

(c) **Father not identified.**—If the petition does not identify the father of the child, it shall state whether a claim of paternity has been filed under section 8303 (relating to claim of paternity).

1980, Oct. 15, P.L. 934, No. 163, § 1, effective Jan. 1, 1981.

938 (1984). Preliminarily, however, we must determine whether appellant has a legally recognizable basis upon which to argue these principles.

There is an absence of controlling authority specifically on point. One Pennsylvania court has held that "foster parents have no standing to adopt a child placed in their custody until the absolute, unequivocal, written consent of the children's legal custodian or other person whose consent was necessary was given." Annot., 21 A.L.R.4th 535, 547 (1983), citing, *In Bolte Adoption*, 67 Montg. 106 (1951). In the case *sub judice*, it seems that appellee has legal custody of the minor child under consideration, as seen in contradistinction to mere temporary physical possession, 23 P.S. § 1003,[2] which now rests with foster parents who are not involved in this proceeding.

Prior decisions of this Court and the Pennsylvania Supreme Court have noted the preferred scenario that siblings should be raised together. *Albright v. Commonwealth ex rel. Fetters*, 491 Pa. 320, 421 A.2d 157 (1980); *Ferencak v. Moore*, 300 Pa.Super. 28, 445 A.2d 1282 (1982). The minor child under consideration now resides in a foster home together with her sibling. We must balance the great need for stability, which is an integral part of healthy human development, with the realization that foster care is, by its very nature, temporary.

The issues that influence a child's development are among the most important matters that we consider. After a careful review of the equities and circumstances of this case, we find that the best interests of the minor child herein are served by permitting appellee to maintain legal custody. Appellant has no standing to contest this custody determination. The purpose of the appellee organization is to protect the interests of children such as the one whose

**2.  § 1003 Definitions**

'Legal Custody'. The legal right to make major decisions affecting the best interests of a minor child, including, but not limited to, medical, religious and educational decisions.

'Physical Custody'. The actual physical possession and control of a child.

custody appellant seeks. Whereas everyone involved naturally wants whatever serves the best interests of the child, we conclude that the best interests of the child herein are served by contributing to a stable upbringing.

Accordingly, the judgment of the court of common pleas must be affirmed.

BECK, J., files a concurring opinion

BECK, Judge, concurring:

While I agree with the majority's conclusion, I write separately to emphasize the important role of state regulations in this area of the law which grant foster parents the right to appeal the relocation of a foster child.

The Foster Family Care Agency regulations provide, *inter alia* :

### § 3700.73 Foster parent appeal of child relocation.

(a) *Foster parents may appeal the relocation of a child* from a foster family home except under the following conditions:

(1) the child has been with the foster family less than six months;

(2) the removal is initiated by the court;

(3) the removal is to return the child to his parents;

(4) the removal is to place the child for adoption; or

(5) an investigation of a report of alleged child abuse indicates the need for protective custody removal to protect the child from further serious physical or mental injury, sexual abuse, or serious physical neglect as defined in Chapter 3490 (relating to child protective services—child abuse).

(b) *The FFCA shall inform foster parents in writing that they may appeal the relocation of a child* in accordance with subsection (a) at least 15 days prior to the relocation of the child.

(c) *Foster parents who wish to appeal the relocation of a child must submit to the FFCA a written appeal* to

be postmarked no later than 15 days after the date of the notice of their right to appeal the child's relocation. 55 Pa.Code § 3700.73 (emphasis added).

Although appellants clearly had a right to appeal the relocation of the child, they apparently did not exercise it. Appellants claimed in the court below that appellee Fayette County Children and Youth Services failed to notify them of the planned relocation in accordance with the provisions of Section 3700.73(b). (Record at 16a). Nonetheless, appellants did not raise the issue of compliance with Section 3700.73 for our review and consequently we may not address it. *See* Pa.R.A.P. 2116(a); *Commonwealth v. Gray,* 339 Pa.Super. 385, 391 n. 3, 489 A.2d 213, 216 n. 3 (1985).

While consideration of the provisions of Section 3700 does not affect the result reached by the majority, I believe it is important to recognize the authority of the state regulations and the protections they afford foster parents.