527 A.2d 1052

**In re ADOPTION OF S.C.P.**

**Appeal of R.L.L. and M.A.L.**

**In re ADOPTION OF S.C.P.**

**Appeal of D.N.P., Guardian ad litem.**

Superior Court of Pennsylvania.

Argued April 29, 1987.

Filed June 22, 1987.

Dennis B. Rafferty, Latrobe, for appellant (at 1348).

Dorean N. Petonic, Johnstown, for appellant (at 1639).

Before CIRILLO, President Judge, and MONTEMURO and TAMILIA, JJ.

CIRILLO, President Judge:

This is an appeal from trial court orders which essentially rebuffed the efforts of the former foster parents of S.C.P. to adopt him. This appeal is pursued by both the former foster parents, R.L.L. and M.A.L., as well as S.C.P.'s guardian ad litem, D.N.P.

The basic issue presented for our review is whether foster parents have standing to seek the adoption of their former foster child when the legal custodian, a child welfare agency, does not consent to the adoption.[1]

1. Although the guardian ad litem filed a separate appeal from an order denying her request for an injunction, she basically argues the same position as the foster parents. We do not regard her standing as

The child in question, S.C.P., was born in December 1984. In September 1985, the Family Court Division of the Westmoreland County Court of Common Pleas granted custody of S.C.P. to appellee Westmoreland County Children's Bureau and the Bureau placed S.C.P. with his former foster parents, R.L.L. and M.A.L. Shortly thereafter, the parental rights of S.C.P.'s natural parents were terminated.

R.L.L. and M.A.L. were informed that their status as foster parents was temporary in nature and would end when a suitable adoptive home could be found for S.C.P. The Bureau formally demanded that the foster parents return S.C.P. in order to effectuate his placement with adoptive parents. The foster parents refused to return S.C.P. to the Bureau.

R.L.L. and M.A.L. filed a petition for injunction, a "report of intent to adopt" and a petition for custody. The Bureau filed a motion to strike the report of intent to adopt, and a petition for writ of habeas corpus.

The trial court denied the petitions of R.L.L. and M.A.L. and granted the Bureau's motion to strike and its habeas corpus petition. That is, the trial court ordered the foster parents to deliver physical custody of S.C.P. to the Bureau. S.C.P. now resides with his prospective adoptive parents.

This Court previously denied expedited injunctive relief from that order. The trial court also denied a separate attempt by the guardian ad litem to block the removal of S.C.P. from his foster home. Before us now is an appeal by R.L.L. and M.A.L., as well as the guardian ad litem, from two orders which essentially prohibit interference with the Bureau's attempt to find an adoptive home for S.C.P.

a real issue here. Indeed, when the trial court denied the guardian's requested injunction, it noted that "the issue in question has been decided by this court in its opinion" following the order which denied the relief requested by the foster parents. *See generally* Annotation, *Required Parties in Adoption Proceedings*, 48 A.L.R. 4th 860 (1986) (cases collected); Annotation, *Status and Rights of Foster Children and Foster Parents under Federal Constitution*, 53 L.Ed.2d 1116 (1978) (same).

In *Priester v. Fayette County Children and Youth Services*, 354 Pa.Super. 562, 512 A.2d 683 (1986) (Cirillo, P.J.), we considered whether foster parents had standing to pursue an action for custody. We reasoned that they did not. The trial court, in a well-researched and well-reasoned opinion, relied in part on *Priester* for its determination.

We had occasion in *Priester* to discuss the nature of foster care. We recognized that "[f]oster care has been defined as a 'child welfare service which provides substitute family care for a planned period for a child when his own family cannot care for him for a temporary or extended period, and when adoption is neither desirable nor possible.'" *Id.*, 354 Pa.Superior Ct. at 564, 512 A.2d at 683 (citing *Smith v. Organization of Foster Families*, 431 U.S. 816, 823, 97 S.Ct. 2094, 2098–99, 53 L.Ed.2d 14 (1977)).

Our reliance on the United States Supreme Court's decision in *Smith* further revealed that "[t]he distinctive features of foster care are first, 'that it is care in a *family*, it is noninstitutional substitute care,' and second, 'that it is for a *planned* period—either temporary or extended. This is unlike adoptive placement, which implies a *permanent* substitution of one home for another.'" *Id.* 354 Pa.Super. at 564, 512 A.2d at 683 (citing *Smith*, 431 U.S. at 824, 97 S.Ct. at 2099) (emphasis in original).

Our decision in *Priester* was influenced by the reasoning of the Montgomery County Court of Common Pleas which had resolved a dispute by ruling that "'foster parents have no standing to adopt a child placed in their custody until the absolute, unequivocal, written consent of the children's legal custodian or other person whose consent was necessary was given.'" *Priester*, 354 Pa.Super. at 566, 512 A.2d at 684 (citation omitted). Application of this holding from *Priester* to the facts of this case effectively resolves this appeal.

The Bureau has had legal custody of S.C.P. at all times relevant to this appeal. It has unequivocally refused to grant its written consent to the adoption of S.C.P. by his

foster parents.[2]  Therefore, application of *Priester* compels us to conclude that the former foster parents have no legal standing to pursue the adoption of S.C.P.

Our conclusion necessarily means that 23 Pa.C.S. § 2531(a), which describes who may file a report of intention to adopt, does not encompass foster parents.  As we observed in the case of *In re Adoption of Crystal D.R.*, 331 Pa.Super. 501, 512, 480 A.2d 1146, 1152 (1984), it remains the responsibility of government agencies, such as the Bureau involved here, to seek a permanent home for foster children.  It is not the responsibility of foster parents.  In *Crystal*, we determined that foster parents had no standing to pursue the termination of the parental rights of a child's natural parents.  We reasoned that "the Legislature has provided that the relationship between the foster parents and the child is by its very nature subordinate ... to the relationship between the agency [in charge of foster children] and the child...." [3]  *Id.*, 331 Pa.Superior Ct. at 509, 480 A.2d at 1151.

As we stated in *Priester*, the "issues that influence a child's development are among the most important matters that we consider."  354 Pa.Super. at 566, 512 A.2d at 685.  R.L.L. and M.A.L., as experienced foster parents, knew that they were embarking on a temporary relationship.  They should not be permitted to circumvent the ephemeral expectations upon which the foster parent concept was designed.  Our thorough consideration of the facts and equities of this case leads us to conclude that S.C.P.'s best interests are served by allowing the Bureau, his legal custodian, to

**2.** *See* 23 Pa.C.S. § 2711(a)(5) (consent to an adoption is required of the person or persons having custody of the adoptee, whenever the adoptee has no parent whose consent is required).

**3.** We are aware of the possible problems recognized in the *Crystal* case, where it was observed that "If the number of parents wishing to adopt children exceeds the number of children available for adoption, people may become foster parents in the hope of adopting the child." *Crystal*, 331 Pa.Super. at 511, 480 A.2d at 1152 (quoting Wald, *State Intervention on Behalf of "Neglected Children": Standards for Removal of Children in Foster Care, and Termination of Parental Rights*, 28 Stan.L.Rev. 623, 685 (1976)).

steward his adoption proceedings without interference from his former foster parents.

Affirmed.