656 A.2d 1346

## CHESTER COUNTY CHILDREN AND YOUTH SERVICES, Appellee,

### v.

## Donald E. and Middie CUNNINGHAM, Appellants.

Supreme Court of Pennsylvania.

Argued Dec. 5, 1994.

Decided April 5, 1995.

P. Richard Klein, West Chester, for Cunninghams.

Michael Churchill, Philadelphia, for amicus.

E. Craig Kalemjian, Guy A. Donatelli, West Chester, for Chester County Children & Youth Services.

Jean Speiser Polen, West Chester, for Guardian ad litem for the children.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

### ORDER

PER CURIAM.

The court being equally divided, the order of the Superior Court 431 Pa.Super. 421, 636 A.2d 1157 (1994), is affirmed.

PAPADAKOS, J., did not participate in the decision of this case.

FLAHERTY, J., files an opinion in support of affirmance which is joined by ZAPPALA and CAPPY, JJ.

MONTEMURO, J., files an opinion in support of reversal which is joined by NIX, C.J., and CASTILLE, J.

MONTEMURO, J., is sitting by designation.

## OPINION IN SUPPORT OF AFFIRMANCE

FLAHERTY, Justice.

The issue is whether foster parents have standing to commence adoption proceedings without the consent of the child welfare agency which has legal custody of the foster children. The trial court held that standing was conferred by *In re Adoption of Hess*, 530 Pa. 218, 608 A.2d 10 (1992), but was reversed by a divided panel of the Superior Court. We would affirm, as neither the adoption statute nor *Hess* confers standing on foster parents.

Appellants Donald and Middie Cunningham instituted this action by filing reports of intention to adopt their foster daughter, A.L.O., and her brother, N.A.W., then five and two years old, respectively. N.A.W. has been in the care of the Cunninghams since he was ten days old, and A.L.O. since she was two and one-half years old. When the rights of the natural parents were terminated, appellee Chester County Children and Youth Services (CYS) was awarded custody of the children.

Early in 1992, the Cunninghams inquired of CYS whether they might be permitted to adopt A.L.O. and N.A.W. On January 24, 1992, CYS informed the Cunninghams by letter that the agency would not approve them as adoptive parents due to their age and other factors. Mr. Cunningham was then 63 and Mrs. Cunningham 50. Another factor was the care needed by the Cunninghams' adopted children Joshua and Tatiana, both nine years old at the time, biracial children who had been in the Cunninghams' foster care prior to their CYS-approved adoption in July, 1991. The agency concluded that the age discrepancy between the Cunninghams and A.L.O. and N.A.W., coupled with the demands placed on the family by the recently adopted nine-year-olds, created a situation where the best interest of the children, A.L.O. and N.A.W., would be

better served if they were adopted by one of the many younger couples available and willing to adopt them.[1]

In spite of the disapproval of CYS, the Cunninghams filed reports of intention to adopt both children. CYS filed preliminary objections based on the Cunninghams' lack of standing. The Cunninghams argued that CYS unreasonably withheld its consent and that a hearing would be necessary to assess the reasonableness of CYS's lack of consent. The trial court overruled CYS's preliminary objections, certifying that an immediate appeal of the interlocutory order might materially advance the ultimate termination of the matter. The Superior Court accepted jurisdiction pursuant to 42 Pa.C.S. § 702(b) and reversed, sustaining the preliminary objections of CYS and dismissing the reports of intention to adopt. We granted allocatur to review the standing of foster parents to initiate adoption proceedings without the consent of the agency which has legal custody and has placed the children in the foster home.

Appellants, the Cunninghams, argue that the adoption act provides that "[a]ny individual may become an adopting parent," 23 Pa.C.S. § 2312, and does not exclude foster parents. Appellants cite several Superior Court cases in which parties other than parents were awarded custody, establishing that parties other than parents may have standing in custody and adoption matters. Appellants claim that the agency decision was based on impermissible age discrimination and was not in the best interest of the children. Appellants argue that the Superior Court erred in holding that they had no standing to initiate adoption proceedings without the consent of CYS inasmuch as the Supreme Court, in *Hess, supra,* 530 Pa. 218, 608 A.2d 10, held that such consent is not essential and may be dispensed with if unreasonably withheld. Determining whether nonconsent is reasonable requires a hearing; appellants therefore argue that the need for such a determination would

1. It has been alleged that the special needs of the foster children in this case make it unlikely that any other family will adopt the children. The allegation, however, is wholly speculative and without support in the record.

necessarily preclude dismissal on preliminary objections for lack of standing. According to appellants, the polestar in adoption proceedings—the best interest of the children—cannot be pursued unless the court permits the participation of foster parents such as the Cunninghams who have demonstrated love and commitment in providing long-term care for the children.

This entire argument is based on the premise that *Hess* affected the requirement of agency consent, not only in adoptions involving grandparents, as in *Hess,* but in all adoptions. The Superior Court properly rejected appellants' premise, explaining its interpretation and application of *Hess* to this case as follows:

> In analyzing the applicability of *Hess* to the instant case, we have no doubt that the Supreme Court clearly was persuaded by the significance of the relationship of the grandparents to the children. The Court repeatedly emphasized this fact. The entire analysis by the Supreme Court revolved around the relationship of the appellees to the children. Indeed, the Court relied upon specific statutory provisions exclusive to grandparents. For example, the Court noted that 23 Pa.C.S. § 2531(c) specifically envisions that grandparents might choose to adopt their grandchildren. The Court stated, "[T]he Act contemplates that a grandparent might choose to adopt his or her grandchild, and allows the grandparent to benefit from the relationship to the child by relieving the grandparent of the obligation to file a Report of Intention to Adopt." *In re Adoption of Hess, id.,* 530 Pa. at 224, 608 A.2d at 13. The Court went on to state that the various requirements indicate "that a relationship between the proposed adoptive parent and the adoptee is a relevant consideration." *Id.* There is no such relationship in the instant case.

> . . . .

> Finally, in discussing the parameters of the majority's holding, Justice Zappala, in a dissenting opinion, stated, "I cannot conceive that the majority would allow an individual who was unrelated to the child to intervene in the proceeding . . . ." *In re Adoption of Hess, id.,* 530 Pa. at 233, 608

A.2d at 18 (Zappala, J., dissenting). This is but another confirmation for the position that it was the grandparents' familial relationship to the children which controlled the outcome of the case.

We believe *Hess* is confined to the facts and considerations of that case, none of which is present herein. Instead, the established law in this Commonwealth, as most recently reaffirmed in *In re Adoption of S.C.P.*, [364 Pa.Super. 257, 527 A.2d 1052 (1987) ], controls the result in this case. We held in *S.C.P.* that 23 Pa.C.S. § 2531(a), which describes who may file a report of intention to adopt, does not encompass foster parents. We reiterated, "[F]oster parents have no standing to adopt a child placed in their custody until the absolute, unequivocal, written consent of the children's legal custodian or other person whose consent was necessary was given." *Id.*, 364 Pa.Super. at 260, 527 A.2d at 1054, quoting *Priester v. Fayette County Children and Youth Services*, [354 Pa.Super. 562, 566, 512 A.2d 683, 684 (1986) ]. As we stated in *S.C.P.*, application of this holding to the facts of the instant case effectively resolves this appeal.

*Chester County Children and Youth Services v. Cunningham*, 431 Pa.Super. 421, 425–27, 636 A.2d 1157, 1160 (1994).

*Hess* applied to grandparents only, as the Superior Court recognized; it was based only on the importance of consanguinity and the numerous legislative provisions unique to grandparents. Indeed, this author, together with two other members of the court, dissented from that holding, which must be viewed as a narrow extension of grandparental rights. It is not the intention of this court to ignore the clear language of the adoption statute by dispensing with the requirement of agency consent in the case of foster parents or anyone else besides grandparents.

Appellants rely on 23 Pa.C.S. § 2531(a) to establish their right to seek adoption, raising the issue of an apparent conflict between that provision and 23 Pa.C.S. § 2711(a)(5). Title 23, Pa.C.S. § 2531(a), describing who may file a report of intention to adopt, states:

(a) **General rule.**—Every person now having or hereafter receiving or retaining custody or physical care of any child for the purpose or with the intention of adopting a child under the age of 18 years shall report to the court in which the petition for adoption will be filed.

Section 2711(a)(5), part of a list of people and entities whose consents to adoption are required, includes:

(5) The guardian of the person of an adoptee under the age of 18 years, if any there be, or of the person or persons having the custody of the adoptee, if any such person can be found, whenever the adoptee has no parent whose consent is required.

Appellants attempt to avoid the force of the latter section by asserting inclusion in the former. They claim to fit narrowly into section 2531(a) as people "retaining ... physical care ... with the intention of adopting...." As experienced foster parents, however, appellants "knew that they were embarking on a temporary relationship. They should not be permitted to circumvent the ephemeral expectations upon which the foster parent concept was designed." *In re Adoption of S.C.P.*, 364 Pa.Super. at 261, 527 A.2d at 1054. Thus, their "intention" of adopting was surreptitious and overstepped the legitimate bounds of their role as foster parents. An analysis analogous to estoppel compels us to regard them as outside the class of those persons identified in section 2531(a) who have standing to seek adoption. Section 2711(a)(5), on the other hand, makes it clear that in the legislatively created framework for adoption, a foster parent must obtain the consent of the child welfare agency when the agency has legal custody.[2]

The status of foster parents is subordinate to that of the agency which has legal custody of foster children. This is implicit in the definitions utilized by the United States Supreme Court:

2. The fact that 23 Pa.C.S. § 2713(2) permits a court, in its discretion, to dispense with the consent of the guardian child welfare agency required by section 2711(a)(5) in no way helps foster parents who fail to obtain such consent and thus lack standing to seek the dispensation afforded by section 2713(2).

Foster care has been defined as "[a] child welfare service which provides substitute family care for a planned period for a child when his own family cannot care for him for a temporary or extended period, and when adoption is neither desirable nor possible." Thus, the distinctive features of foster care are first, "that it is care in a *family*, it is noninstitutional substitute care," and second, "that it is for a *planned* period—either temporary or extended. This is unlike adoptive placement, which implies a *permanent* substitution of one home for another."

*Smith v. Organization of Foster Families*, 431 U.S. 816, 823–24, 97 S.Ct. 2094, 2099, 53 L.Ed.2d 14, 22 (1977) (citations omitted, emphasis in original), cited in *Priester v. Fayette County CYS*, 354 Pa.Super. at 564, 512 A.2d at 683. This relationship has been made explicit in a consistent line of cases decided by the Superior Court wherein it is stated that "foster parents have no standing to adopt a child placed in their custody until the absolute, unequivocal, written consent of the children's legal custodian or other person whose consent was necessary was given." *In re Adoption of S.C.P.*, 364 Pa.Super. at 260, 527 A.2d at 1054; *Priester v. Fayette County CYS*, 354 Pa.Super. at 566, 512 A.2d at 684. The nature and characteristics of the relationship between child welfare agency and foster parents are further explored and delineated in *In re Adoption of J.M.E.*, 416 Pa.Super. 110, 114–15, 610 A.2d 995, 997–98 (1992):

[We have] noted the significant role assumed by the agency which places the child. We stated that it is impractical for an agency to care for a child, thus it transfers physical custody to foster parents, while remaining responsible for the care of the child.... [T]he agency supervises the performance of the foster parents: 1) by approving the foster home; 2) by arranging payment for the foster parents for providing care for the child; 3) by enforcing regulations governing the child's health, safety, and discipline; and 4) in appropriate circumstances, by removing the child from the foster home.... [T]he relationship of the foster parents to the child "is a subordinate relationship,

supervised by the agency, and in turn by the court, responsible for placing the child."

(Citations omitted.)

The subordinate status of foster parents vis-a-vis both a placement agency and adopting parents is further underscored by 55 Pa.Code § 3700.73(a)(4), relating to foster parent appeal of child relocation: "Foster parents may appeal the relocation of a child from the family *except* under one of the following conditions: ... [t]he removal is to place the child for adoption." (Emphasis added.)

Although foster parents play an important, if not critical, role in the care of dependent children, they are not necessarily qualified to serve as adoptive parents. Thus it is that a child welfare agency may consent to adoption by foster parents in one instance but not in another. Foster parents are merely one example of the many categories of potential adopting parents, people who have established positive relationships and played beneficial roles in the lives of foster children. Such categories include: foster parents, school teachers, distant relatives, clergy, music instructors, babysitters, doctors, nurses, parents of playmates, therapists, athletic coaches, counselors, and Scout leaders, to name a few. Every person who plays a beneficial role in a foster child's life, however, does not have standing in an adoption, under the legislative plan. Adoption proceedings involve many people, agencies, officers, and officials who implement the many safeguards provided to insure the welfare of the children. Trying to predict what is in a child's best interest seems well-nigh impossible in some cases, but the schema to be employed is in the hands of the legislature. The statutory mandate requires agency consent, and, without it, foster parents do not have standing. The Superior Court was correct in so holding.

Order affirmed.

PAPADAKOS, J., did not participate in the decision of this case.

MONTEMURO, J., files an opinion in support of reversal which is joined by NIX, C.J., and CASTILLE, J.

MONTEMURO, J., is sitting by designation.

## OPINION IN SUPPORT OF REVERSAL

MONTEMURO, Justice.

The Opinion in Support of Affirmance today slams the courthouse door at the behest of a human service agency which has, without the necessity of justifying its action to anyone, determined unilaterally where the best interests of the child lie. The children involved here possess special needs. Both were born cocaine addicted, with the myriad problems attendant upon that condition, and with respiratory diseases which, in the case of one child have required emergency hospital care, and for the first year of his life, almost constant attention. If these children are, as the agency suggests, no different than any other normal foster children, that normalcy is in large measure due to the nurturance they have received from appellants during the last few years. Appellants should not be foreclosed from the opportunity to demonstrate to the court their continued worthiness and suitability to care for these children. We conclude that foster parents have standing to file a "Report of Intent to Adopt," even without the consent of the child placement agency.

The Adoption Act of 1970, codified at 23 Pa.C.S. §§ 2101–2901, sets forth the specific procedures that must be followed by a party seeking to adopt a child. According to these provisions, "[a]ny individual may become an adopting parent." 23 Pa.C.S. § 2312. Under Section 2531, a potential adoptive parent must file a "Report of Intent to Adopt" to the court in which the petition for adoption will be filed. This Section provides that, "[e]very person . . . receiving or retaining custody or physical care of any child for the purpose or with the intention of adopting a child" shall file a "Report of Intent to Adopt." The synthesis of these two Sections is that "any person" who has "received or retained . . . physical care . . . with the intention of adopting a child under the age of 18" may file a Report of Intent to Adopt before the court. Thus,

nothing in the Act would prevent foster parents as a class from filing such a report to begin the adoption process. In fact, it is not uncommon for foster parents to adopt foster children in this Commonwealth, as indeed appellant have already done with two of their foster children. Ordinarily, the child placement agency approves of the arrangement, and the adoption goes forward. Here, because approval was not forthcoming, the issue became whether foster parents have standing to adopt their foster children when the agency withholds its consent. How the agency's refusal to grant consent deprives the foster parents of "standing" is nowhere explained.

To have standing, a party must have a substantial interest in the subject-matter of the litigation; that interest must be direct and immediate, not remote. *S. Whitehall Tp. Police Service v. S. Whitehall Tp.*, 521 Pa. 82, 86, 555 A.2d 793, 795 (1989) (quoting *Franklin Tp. v. Dept of Environmental Resources*, 500 Pa. 1, 4, 452 A.2d 718, 719 (1982)). A "substantial" interest is an interest in the litigation which surpasses the interest of all citizens in procuring obedience to the law. *Id.* A "direct" interest requires a showing that the matter complained of caused harm to the party's interest. *Id.* An "immediate" interest involves the nature of the causal connection between the action complained of and the injury to the party challenging it, and is shown where the interest lies within the zone of interests sought to be protected by the statute. *Id.* The plain language of the Act gives Appellants a substantial, direct, and immediate interest in filing a "Report of Intent to Adopt." This must be the case because foster parents have long had "standing" to adopt their foster children in this Commonwealth when they have been given consent by the family service agency. The absence of such consent does not vitiate the direct, substantial, and immediate interest conferred by the statute.

The Opinion in Support of Affirmance holds that our decision *In re Adoption of Hess*, 530 Pa. 218, 608 A.2d 10 (1992) precludes standing in the instant case. Upon closer examination, *Hess* is not applicable. In *Hess*, two children were placed in the custody of Family and Youth Services of Lancas-

ter County by their birth parents who executed "Consents to Adoption." The children were transferred to the custody of the adoptive parents who ultimately filed a "Report of Intent to Adopt." When the children's grandparents became aware of the adoption proceedings, they attempted to intervene. We stated that the issue in the case was "whether the grandparents were ever entitled to inject themselves into a series of proceedings designed to effectuate the best interests of their two grandchildren . . . ." *Hess*, 530 Pa. at 223, 608 A.2d at 12. We then considered the grandparents' interest in their grandchildren, and in essence, created a judicially crafted exception allowing grandparents to intervene in adoption proceedings after a Report of Intent to Adopt had been filed by prospective adoptive parents. We permitted this exception to operate even in cases where the birth parents had given up all rights to the child.

Thus, *Hess* deals with the concept of the right of parties to intervene in adoption proceedings. However, the Majority Opinion in *Hess* never mentions standing,[1] which is a concept distinct from intervention.[2] Intervention requires a "more refined, more direct, and more substantial" interest than is necessary for standing.[3] While the exception allowing intervention in adoption proceedings created in *Hess* should be a narrow one limited to grandparents, the creation of a similar exception in the analogous situation in which foster parents seek to inject themselves into adoption proceedings after other prospective adoptive parents have filed a "Report of Intent to Adopt" foster children is not desirable. However, here, Ap-

---

1. In fact, the word "standing" never appears in the Majority Opinion, although it is discussed by Mr. Justice Zappala in his dissent, which argues that the grandparents could not intervene because they lacked standing. *Hess*, 530 Pa. at 229, 608 A.2d at 16.

2. "Intervention, it has been held, is concerned with something more than standing to sue; it is concerned with protecting an interest which practically speaking, can be protected only through intervention in the current proceeding. Where the question is not simply one of standing, but of right to intervene, the interest must be more refined, more direct, and more substantial.
   59 Am.Jur.2d *Parties* § 135 (1987)

3. *See supra* note 2.

pellants do not wish to inject themselves in adoption proceedings commenced by someone else. Thus, they do not face the heavier burden of interest placed on an intervenor. Instead, they must only satisfy the lighter burden of having a "direct, substantial, and immediate" interest that applies to those who seek to initiate proceedings. Appellants have met this burden exactly as have all other foster parents who have previously adopted their foster children.

It is true that Appellants would not be able to file a "Report of Intent to Adopt" in this matter if the agency's refusal to consent foreclosed all possibility of adopting their foster children. Were it completely out of the question for them to adopt without the agreement of the agency, they obviously could have no actual interest in the outcome of the proceedings[4] This is not the case under the Act. The Opinion in Support of Affirmance properly states that adoptive parents must obtain the consent of the child's guardian if the child is under 18 years of age. *See* 23 Pa.C.S. § 2711(a)(5). In this case the guardian is the agency. However, the Opinion in Support of Affirmance fails to mention 23 Pa.C.S. § 2713 which provides that "[t]he court in its discretion may dispense with the consents other than that of the adoptee to a petition for adoption when the adoptee is under 18 years of age and has no parent living whose consent is required." In this limited regard, *Hess* is instructive. There, we held:

> "[I]t seems clear that if the court determines that the agency's consent is being held unreasonably, the court may dispense with the requirement of § 2711(a)(5) that the agency consent to the adoption. The agency's implicit assertion that its opinion will control the outcome of the adoption is therefore baseless."

*Hess*, 530 Pa. at 226, 608 A.2d at 14.

In this case, the children are under 18 years of age and consent of the parents is not required. Therefore, a court would have the power to dispense with the consent of the

---

4. This situation would be best characterized as one of mootness rather than lack of standing.

agency. Accordingly, the withholding of consent by the agency does not render the Appellant's interest in this matter moot as the court presiding over the adoption would have the power to dispense with that consent.

Thus, the Opinion in Support of Affirmance creates a rule which grants foster parents "standing" when the agency approves, yet refuses them "standing" when the agency disapproves. Under the general principles of standing, there is no logical reason to distinguish between the two situations on this basis. Admittedly, the concept of standing is an amorphous one. Usually, standing is a requirement that parties have sufficient interest or injury in a lawsuit to ensure that there is a legitimate controversy before the court. *See* 59 Am.Jur.2d § 30 *Parties* (1987). Here the Opinion in Support of Affirmance is not using the concept of standing in its generally accepted sense. Rather, it is being used as a policy tool to prevent foster parents from adopting their children absent the consent of the agency on a *per se* basis. In effect, foster parents' legal status, and thus their ability to appear before the court, is being determined not by the nature of their relationship to the controversy, but by another party *to* the controversy. As a matter of jurisprudence such a rule as the Opinion in Support of Affirmance sets forth is ill-conceived and contrary to the Act.

Our law places the supervision of adoptions firmly under the control of the courts of this Commonwealth. It is the duty of the court to determine whether adoption of a child will be consistent with the child's welfare and best interests. *See In re Adoption of Jacono,* 426 Pa. 98, 100, 231 A.2d 295, 296 (1967) ("Once an abandonment has been established, then and only then, it becomes the duty of the court to determine whether adoption of a child will be for the child's welfare and best interests."); *In re Adoption of Hookey,* 419 Pa. 583, 589, 215 A.2d 860, 863 (1966) (same). The Act directs the courts to take testimony and, if necessary, to order an investigation to decide whether adoption suits, "the physical, mental, and emotional needs and the welfare of the child." 23 Pa.C.S. § 2724. In *Hess* we made clear that it is the best interests of

the child as determined by the court, rather than the will of the family service agency, that governs. *See Hess,* 530 Pa. at 226, 608 A.2d at 14. The rule established by the Opinion in Support of Affirmance violates these well established principles, as courts will be unable to review a whole class of potential adoptions. Instead, these potential adoptions will be placed entirely within the discretion of family service agencies. For example, foster parents who obtain the consent of the agency can file a "Report of Intent to Adopt" and gain review of the court to complete the adoption. However, those who fail to obtain the consent of the agency can go no further as they have no "standing." This scheme is contrary to both the letter and spirit of the Act. Our law clearly places the responsibility with the court to make the final determination of what is in the best interests of the child. Nowhere does it grant family service agencies an unreviewable power to determine who can and cannot adopt a child in this Commonwealth. The Opinion in Support of Affirmance erroneously gives these agencies absolute and unreviewable discretion in situations such as the one presented here. However, foster parents should be able to appeal the agency's decision to the court for a determination of whether adoption would be in the best interests of the child. It can be anticipated that in most cases, the court would defer to the considerable expertise of the agency and affirm its decision to withhold consent. However, such a scheme would insure that the courts, not social service agencies, make the final decision as to whether adoption is in the best interests of the child in any given case. This is mandated by the plain language of the Act.

Foster care is, as the Opinion in Support of Affirmance correctly points out, intended as a temporary means of caring for children. Allowing foster parents to file a "Report of Intent to Adopt" without the agency's consent would in no way change this fact. As discussed *supra,* we have long allowed foster parents, including appellants, to adopt their children with the agency's consent. Thus, this is not a case of giving foster parents some new right. Instead it is a case of extending limited procedural protections to foster parents in order to

prevent abuses of discretion by family service agencies. Our law has recognized limited procedural protections for foster parents in other contexts. For example, the Pennsylvania Code of Regulations allows foster parents to call for a hearing before a foster child is removed from their home. *See* 55 Pa.Code 3700.3. Foster parents should also be given the limited procedural protection of filing a "Report of Intent to Adopt" in order to prevent arbitrary actions by family service agencies.

This conclusion comports with the only disinterested voice to be heard in the present controversy. The guardian ad litem, who is concerned only with protecting the interests of the children, strongly urges that the foster parents be given the opportunity to present their case. As the Superior Court dissent notes,

> [T]he grant of standing does nothing more than allow an interested party to be heard in court; it surely does not amount to an award of custody nor does it change at all the standards by which the court decides the issue. Indeed, the "best interests" of the child remain the paramount concern in these matters.

*Chester County Children and Youth Services v. Cunningham,* 431 Pa.Super. at 428, 636 A.2d at 1161.

To deny standing to appellant subordinates the children's best interests to the will of human service agencies. We have seen under other circumstances that such agencies are not immune from need of rules imposed by the courts. *Gibbs v. Ernst, et al.,* 538 Pa. 193, 647 A.2d 882 (1994) (duty of disclosure applies to adoption agency which had misrepresented child's background). There is no intention to cast aspersions on the very valuable work of such agencies; however, they too may err. It is thus for the court to decide where the best interests of the child lie. By refusing parents any forum in which to demonstrate their position, error goes uncorrected, sometimes with devastating results.

For the above-mentioned reasons, the order of the Superior Court should be reversed.

NIX, C.J., and CASTILLE, J., join this Opinion in Support of Reversal.