685 A.2d 180

**In the Interest of G.C., a minor.**

**Appeal of Marvin and Brenda SCHADEL.**

Superior Court of Pennsylvania.

Argued Oct. 8, 1996.

Filed Nov. 12, 1996.

266

Thomas L. Wenger, Harrisburg, for appellants.

Jeffrey L. Mensch, Mifflinburg, Guardian Ad Litem, participating party.

Leslie W. Bryden, Sunbury, for M.P., participating party.

David D. Noon, Sunbury, for D.P., participating party.

Michael J. Robinson, Sunbury, for Northumberland CYS, participating party.

Before TAMILIA, SCHILLER and MONTEMURO *, JJ.

* Retired Justice assigned to the Superior Court.

TAMILIA, Judge:

For the second time, the Superior Court has been requested to determine whether the Schadels, as foster parents, have standing to pursue this action. In our prior en banc determination, *In Interest of G.C.*, 449 Pa.Super. 258, 673 A.2d 932 (1996), we recited the following facts and procedural history:

On July 24, 1992, G.C. was born to Amy Pursel and Travis C. Less than two months later, on September 21, 1992, G.C. was admitted to Geisinger Medical Center suffering from trauma, bruising around his left eye, a torn upper frenulum and a displaced left parietal skull. On the same date, a Child Protective Services referral was anonymously filed with the Northumberland County Children and Youth Services (hereinafter "CYS") indicating that G.C.'s injuries were a direct result of serious child abuse. The allegation of child abuse was later substantiated by a CYS investigation and independent medical evidence. The anonymous report also named the following five individuals as potential perpetrators of the abuse: G.C.'s biological mother and father, Amy Pursel and Travis C.; G.C.'s maternal grandmother and grandfather, Julie Miller and appellee/David Pursel; and G.C.'s maternal step-grandfather, Robert Miller.

On September 25, 1992, following his hospitalization, G.C. was placed in the care of appellants, foster parents approved by CYS. G.C. was then adjudicated dependent and legal custody was awarded to CYS pursuant to The Juvenile Act, 42 Pa.C.S. § 6351 **Disposition of dependent child.** Thereafter, supervised weekly visits were scheduled between the natural parents, David Pursel and G.C. at the foster home. In March of 1993, David Pursel petitioned the court to place G.C. with him. The request was denied but the court allowed G.C. to visit with David Pursel and his wife, at their home, beginning in September, 1993. G.C.'s natural parents then asked appellants to adopt G.C. and appellants agreed and contacted CYS. On February 4, 1994, CYS requested that Amy Pursel voluntarily relinquish her parental rights. Ms. Pursel agreed on the condition

that appellants be allowed to adopt G.C. CYS refused the condition and, on March 14, 1994, decided that G.C. would not be placed with appellants. On May 24, 1994, David Pursel filed a petition seeking physical custody of G.C. Appellants responded by filing their own petition to retain custody of G.C.

On September 13, 1994, following three days of hearings on the respective petitions, the Court of Common Pleas of Northumberland County issued an Order granting physical custody of G.C. to David Pursel. Legal custody remains in CYS. [Appellants then appealed.]

Oral arguments were presented to a panel of this Court on January 26, 1995 and, on March 20, 1995, we issued an Order that the appeal be heard by the Court en banc. *Id.* at 263, 673 A.2d at 934.

Following oral argument, the Court en banc issued its Opinion on March 20, 1995. The Court was divided four to four on the issue of "whether CYS foster parents have standing to seek and contest awards of custody concerning their foster children." *Id.* at 283–85, 673 A.2d at 945. Seven of the eight judges deciding the case, however, agreed that a remand was necessary for the following purposes:

> We remand for proceedings consistent with this Opinion, which will require a comprehensive review of the family history, the efforts, if any, employed by CYS to counsel and aid the child's mother and grandparents dealing with parental stress and the underlying cause for the abuse.

*Id.* In remanding, the Court expressed particular concern over the fact that David Pursel, to whom the trial court had awarded custody of G.C., "was listed on the anonymous Child Protective Services referral as a potential abuser of G.C.," *id.* at 280, 673 A.2d at 943, and "is listed on the Statewide Central Register as a perpetrator of abuse[,]" *id.* at 282, 673 A.2d at 944, citing R. 131a, R. 139a.

Pursuant to our Order, a remand hearing was held on March 25, 1996, just five days after our Opinion was filed. The court heard testimony from numerous witnesses, includ-

ing Jane Kearney, the Administrator of Northumberland County CYS, Ronald McMann, a case work supervisor for Montour County CYS, and Carla Snyder, a caseworker for Northumberland County CYS. These witnesses all were of the opinion that the Pursels had provided a warm and loving home for G.C. Also, it was established that the referral and listing of Mr. Pursel as a child abuser had been "ultimately dismissed and ultimately expunged." (N.T., 3/25/96, p. 104.)

Based on this testimony, the court entered the following findings of fact:

> I find that a close parent-child relationship has developed between the minor child, [G.C.], and Mr. and Mrs. Pursel over the last 18 months. I find that the record reflects that this is a loving and not in any way fearful relationship. I find that the custodians have engaged in appropriate discipline and judgment and care of the minor child in question. I find that the custodians have a sincere desire to provide a permanent home for the minor child, [G.C.]. I find that based on the testimony and the observations of the caseworkers that the home is clearly hygienic, tidy, in good repair [and] that the child always appears to be clean and well presented, well nourished, always has clean clothing.
>
> . . .
>
> The record reflects that the child has been provided adequate health care [and] that there is no need to have any type of parenting classes or stress counseling for either the grandfather or the step grandmother.
>
> . . .
>
> The Court would reaffirm our finding that there is no evidence of misconduct or abuse by either the grandfather or the step grandmother. Again, reiterating that the indicated report was expunged, that there was no foundation by an Administrative Law Judge with regard to any abuse . . .

by the grandfather with regard to the minor child in question.

Findings of Fact, N.T. at 264–266.

The court then held that "the best interest and welfare of the child" would be served by granting full physical and legal custody to David Pursel (N.T. at 266). The court also directed that visitation with appellants would continue until Mr. Pursel filed a notice of intent to adopt G.C. *Id.;* see also Order, Feudale, J., 3/25/96.

■ On April 22, 1996, appellants filed the instant appeal claiming that they have standing and that the trial court abused its discretion in awarding physical and legal custody of G.C. to David Pursel. Initially, appellants allege that the issue of their standing to seek custody of G.C. "was not settled" by our Opinion of March 20, 1995 because "[o]n this issue, the en banc Court was evenly divided." (Appellant's brief at 13.) Appellants' argument overlooks the well-settled principle that a divided vote by an appellate court operates to affirm the decision of the lower court. See e.g. *Chester County Children and Youth Services v. Cunningham,* 540 Pa. 258, 656 A.2d 1346 (1995) (where Supreme Court was equally divided, Order of Superior Court determining that foster parents lacked standing to seek adoption of their foster children absent consent of child welfare agency would be affirmed).

In this regard, we note the following statement of the trial court at the initial hearing:

I've been allowing the Schadels to maintain what I would perhaps characterize as temporary or unadjudicated standing—if I can use that word—in order to better develop the record.... The Court basically considers the foster parents in this proceeding more as a friend of the Court. However, as pointed out in the briefs, the issue I've been asked to consider is whether, in fact, they have true standing in the legal sense....

I do agree ... legally that *the foster parents do not at this point in time have standing.*

(N.T., 9/13/94, pp. 31–34; emphasis added).

Thus, the trial court clearly decided the issue of standing against appellants. The court merely allowed them to participate "as a friend of the Court" "for the purpose of [the initial] proceeding to better develop a record until the end of [the] hearing." (N.T. at 33.) Any doubt as to the trial court's resolution of the standing issue cannot withstand a review of the transcript of the remand hearing, during which the court stated:

We would note for the record that this Court entered an Order on September 13, 1994, after hearing held, granting physical custody to the maternal grandfather, David Pursel, and denying the petition of the foster parents as to custody *due to lack of standing.*

(N.T., 3/25/96, p. 4; emphasis added.)

Marvin and Brenda Schadel ... have not been participating as a result of the ruling of the lower and appellate court that the foster parents do not have standing.

(N.T. at 98; emphasis added.)

Since our en banc Opinion affirmed the trial court decision that appellants lack standing to proceed in this action, and such is the law of the case, we have no option but to quash the instant appeal. See *Tyro Industries, Inc. v. James A. Wood, Inc.,* 418 Pa.Super. 296, 614 A.2d 279 (1992) (issue decided by appellate court on prior appeal between same parties becomes law of the case and will not be considered on subsequent appeal); see also *Corbett v. Weisband,* 380 Pa.Super. 292, 551 A.2d 1059 (1988), alloc. denied, 524 Pa. 607, 569 A.2d 1367 (1989), alloc. denied, *Corbett v. DeMoura,* 524 Pa. 620, 571 A.2d 383 (1989), alloc. denied, *Petition of DeMoura,* 524 Pa. 620, 571 A.2d 383 (1989) (identical and duplicative appeals will be quashed).

■ Further, if, for purposes of review of the remand procedure, we were inclined to consider this appeal as being filed pursuant to the provisional standing conferred by the

trial court in the first instance, appellants still would not prevail. We have examined the record of the March 25, 1996 hearing and find that the trial court complied in all respects with our remand Order. The extensive testimony presented, including that of David and Mary Ann Pursel, convinced the trial court that the best interests of G.C. were served by an award of physical and legal custody to David Pursel. Our own thorough review of this testimony, as well as the briefs of the Pursels, Northumberland County CYS and G.C.'s guardian ad litem, reveals unanimity of opinion that the Pursels have provided G.C. with a loving and nurturing environment. Thus, the evidence of record overwhelmingly supports the trial court's conclusion, and we find no error.[1]

Based on the foregoing, we find that the Schadels lack standing to pursue this appeal. Since they are the only appellants of record, we must quash the appeal.

Appeal quashed.

Dissenting Statement by MONTEMURO, J.

MONTEMURO, J., dissenting.

I dissent for the reasons set forth by my Opinion In Support of Reversal in *Chester County Children and Youth Services v. Cunningham*, 540 Pa. 258, 656 A.2d 1346 (1995).

---

1. Appellant also claims the trial court erred in refusing to allow their participation in the remand hearing. However, since the law of the case is that appellants lack standing, they had no right to participate in the remand hearing. Further, the record indicates that the court "was going to call the Schadels as a court witness, to offer what, if anything, they felt they might want to add to the record, to assist the court in making a determination in this matter...." (N.T., 3/25/96, pp. 98–99.) Unfortunately, appellants had left the remand hearing prior to the court's offer.