**ADOPTION OF: J.D.T. and J.T.T.**

**Appeal of: J.G.R. and M.R.**

Superior Court of Pennsylvania.

Argued Jan. 16, 2002.
Filed March 27, 2002.

Daniel Fennich, York, for appellant.

Martin Miller, York, for Guardian Ad Litem, appellee.

Maria M. Cook, York, for York County Children and Youth Services, appellee.

---

Before STEVENS, TODD and CAVANAUGH, JJ.

CAVANAUGH, J.

¶ 1 This appeal is from an order dismissing with prejudice a petition for adoption filed by the maternal grandparents of two minor children. The lower court determined that the grandparents did not have standing to adopt because of the limited nature of their relationship with their twin grandsons. We reverse.

¶ 2 The facts, as supported by the record, are that the adoptees are J.T.T. and J.D.T., born on November 23, 1996. The appellant-maternal grandfather, J.G.R., is approximately 69 years of age, and appellant-maternal grandmother, M.R., is approximately 73 years of age.

¶ 3 York County Children and Youth Services (hereinafter the "Agency") has been involved with the children since they were born since both their mother and their father suffer from addiction problems, involving alcohol and drugs. Because the boys were born prematurely, they remained in the hospital for the first months of their lives. In January, 1997, the parties entered into a protective services agreement. The boys were adjudicated dependent on February 4, 1997, as a result of the mother's admission into an alcohol rehabilitation program. At that time, the mother was permitted to retain custody of the children since the rehabilitation facility had accommodations for mothers with infant children. However, on or about February 14, 1997, physical custody was transferred to the maternal grandparents. After approximately one week, finding themselves not prepared to care for the infants, the maternal grandparents brought them to a friend of theirs in Adams County to act as the full-time caregiver. The Agency was notified of this change and it had several phone contacts with the friend starting on February 20, 1997. The Agency also conducted a field visit of the friend's home on March 3, 1997, at which time the caseworker indicated that the infants were doing well. In late March, 1997, they were brought back to their maternal grandparents in York County.

¶ 4 At the end of March, 1997, when the mother left the alcohol rehabilitation program prior to completing it, the Agency regained custody of the children from the maternal grandparents and placed them into foster care. The Agency filed a petition for emergency placement, and, after a hearing, on April 23, 1997, custody was again transferred to the mother, to take effect as soon as space opened up at the rehabilitation center.

¶ 5 On June 26, 1997, the boys were returned to their mother. She completed the alcohol rehabilitation program on August 8, 1997, and informed the Agency that she intended to live with her parents until August 15, 1997. When the mother appeared at a babysitter's in an inebriated condition on August 19, 1997, the sitter notified the Agency. Mother and maternal grandparents took the children from the sitter, against the wishes of the Agency, who then notified the police. An altercation between the police and the grandfather and mother ensued, which resulted with charges being filed against the grandfather. After this incident, the boys were placed in protective custody by the Agency and their dependency was reaffirmed on August 27, 1997. They have since been put in a succession of four foster home placements, the most recent and final of which occurred in November, 1998, with a family in Franklin County which seeks to adopt the boys.

¶ 6 On at least two occasions in 1998, in April and in October, the grandparents communicated in writing their desire to be considered resources for their grandsons. In the spring of 1999, the maternal grand-

parents participated in the baptism ceremony of the twins.

¶ 7 The parental rights of both mother and father were terminated by the lower court by decree entered on August 12, 1999. The maternal grandparents had filed a petition for adoption on July 9, 1999, and the petition was held in abeyance pending mother's appeal to this court of the termination order. On July 6, 2000, the appeal was dismissed by this court for failure of mother to file a brief.

¶ 8 Thereafter, counsel for the maternal grandparents took steps to bring the instant petition to the court's attention for disposition. In the meantime, the foster parents in Franklin County had filed a petition for adoption in Dauphin County. This matter was transferred to York County and the lower court had both petitions before it at the time it dismissed the instant petition for lack of standing.

¶ 9 We have recounted in some detail the extent of the grandparents' involvement with their grandsons because the lower court engaged in an analysis that assessed on a quantitative basis the extent of the relationship. We find that the nature and quality of the relationship established in this case does not differ in a significant manner from the relationship between grandparents and grandchildren described by the seminal case, *In re Adoption of Hess*, 530 Pa. 218, 608 A.2d 10 (1992). We read *Hess* and subsequent case law to establish the existence of standing of grandparents in adoption proceedings even where the relationship between them and their grandchildren does not include periods of extended custody or frequent visitation. It is the fact of consanguinity that confers standing upon the grandparents to seek adoption of their grandchildren.

¶ 10 Relevant portions of the *Hess* opinion are the following:

Any individual may become an adopting parent. 23 Pa.C.S.A. § 2312.... [T]he [Adoption] Act contemplates that a grandparent might choose to adopt his or her grandchild, and allows the grandparent to benefit from the relationship to the child by relieving the grandparent of the obligation to file a Report of Intention to Adopt. 23 Pa.C.S.A. § 2531(c). Thus while the Act does not reflect a preference for a grandparent's adoption, it clearly does not exclude grandparents from being considered as prospective adoptive parents. A grandparent seeking to adopt a grandchild also must indicate his or her relationship to that child in the Petition to Adopt. 23 Pa.C.S.A. § 2701(1). This requirement indicates that a relationship between the proposed adoptive parent and the adoptee is a relevant consideration....

Finally, we think it is important to emphasize that by permitting the grandparents to intervene, we are not guaranteeing that they will prevail. Certainly there may be legitimate factors, such as health or infirmities, which might be construed against the grandparents. Nevertheless, they should be permitted to participate in the proceeding just as any other individual or individuals who seek to adopt a child.

*Id.* at 13, 15.

¶ 11 Particularly pertinent facts in *Hess* are 1) the children had been in residence with the grandparents for a period of only a few months when they were removed by their father; 2) the parental rights of both mother and father had been terminated at the time the grandparents sought to intervene in the adoption proceedings; and 3) the agency adamantly insisted that it would not consent to the adoption by the grandparents. These facts are similar to the facts in the instant case and militate in

favor of finding that the grandparents have standing to pursue their adoption petition.

¶ 12 In affirming the denial of standing on behalf of foster parents to file an adoption petition in *Chester Cty. v. Cunningham*, 540 Pa. 258, 656 A.2d 1346 (1995), the opinion in support of affirmance authored by Mr. Justice Flaherty addressed the significance of the *Hess* holding as follows:

> *Hess* applied to grandparents only, as the Superior Court recognized; *it was based only on the importance of consanguinity* and the numerous legislative provisions unique to grandparents. Indeed, this author, together with two other members of the court, dissented from that holding, which must be viewed as a narrow extension of grandparental rights. It is not the intention of this court to ignore the clear language of the adoption statute by dispensing with the requirement of agency consent in the case of foster parents or anyone else besides grandparents.

*Id.* at 1349 (emphasis supplied.)

¶ 13 This statement leaves no other reasonable interpretation but that grandparents are exempt from the requirement of agency approval in pursuing adoption of their grandchildren because of consanguinity. Their standing to maintain the adoption petition is not dependent upon the consent of the social service agency or upon the extent of their past or current contacts with their grandchildren. The supreme court recognized in *Hess* that the nature of the involvement of social service agencies in the family relationship may pose legitimate obstacles to the grandparents' ability to maintain contact with their grandchildren.

¶ 14 Recently, in *R.M. v. Baxter*, 565 Pa. 619, 777 A.2d 446 (2001), the supreme court held that grandparents have automatic standing to pursue custody and visitation of a grandchild, pursuant to 23 Pa. C.S.A. § 5313, after the child has been adjudicated dependent. The court applied the statute in favor of a finding of grandparents' automatic standing despite the presence of language which arguably could be employed to restrict standing to cases where the grandchild was at current risk of parental abuse. The holding of *R.M.* is indicative of the supreme court's expansive, rather than restrictive, reading of statutory language conferring standing upon grandparents in matters pertaining to visitation and custody.

¶ 15 With this pertinent case law as a guide, we find that the lower court erred in imposing the requirement that the grandparents meet the ordinary standards for third-party standing in an action. We note that the court's discussion of custody standing pursuant to 23 Pa.C.S.A. § 5313, *see* lower court opinion at 9, is at odds with the holding in *R.M.*, since it places significance upon the elements that need to be proven to obtain custody or visitation, and not upon the fact of automatic standing.

¶ 16 The fact that the grandparents in the instant matter did not appeal a prior adverse ruling regarding their petition for custody filed in December, 1999, does not dictate the outcome in this adoption proceeding. Custody and adoption are separate, if sometimes related, proceedings, and we are bound to apply the holding in *Hess* to the instant matter.

¶ 17 Order reversed. Case remanded. Jurisdiction is relinquished.