636 A.2d 1157

**CHESTER COUNTY CHILDREN AND
YOUTH SERVICES, Appellant,**

v.

**Donald E. and Middie CUNNINGHAM.**

Superior Court of Pennsylvania.

Argued Oct. 20, 1993.

Filed Feb. 1, 1994.

Guy A. Donatelli, West Chester, for appellant.

P. Richard Klein, West Chester, for appellees.

Jean S. Polen, West Chester, for participating party.

Before BECK, TAMILIA and HESTER, JJ.

HESTER, Judge:

Donald and Middie Cunningham ("foster parents") instituted this action by filing, on November 12, 1992, reports of intention to adopt their foster children, A.L.O., born January 21, 1988, and N.A.W., born January 20, 1991. The rights of the natural parents had been terminated on April 7, 1992, and appellant, Chester County Children and Youth Services (hereinafter "CYS"), had been awarded custody of the children. N.A.W. has been in the Cunningham home since January 30, 1991, when he was ten days old. A.L.O. has lived in the Cunningham home since August 22, 1991, when she was two and one-half years old.

CYS filed preliminary objections to the reports of intention to adopt alleging that the Cunninghams, as foster parents, lacked standing to seek adoption of the children. On February 23, 1993, following the submission of briefs on the issue and oral argument to the common pleas court, the court overruled the preliminary objections. On June 9, 1993, we granted the petition of CYS to appeal this interlocutory order pursuant to 42 Pa.C.S. § 702(b). Following our consideration of the applicable law and our review of the record, we are constrained to reverse.

Initially, we examine our standard of review:

Preliminary objections, the end result of which would be dismissal of a cause of action, should be sustained only in cases that are clear and free from doubt. *Baker v. Brennan,* 419 Pa. 222, 225, 213 A.2d 362, 364 (1965). The test on preliminary objections is whether it is clear and free from doubt from all of the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish his right to relief. *Firing v. Kephart,* 466 Pa. 560, 563, 353 A.2d 833,

835 (1976). To determine whether preliminary objections have been properly sustained, this court must consider as true all of the well-pleaded material facts set forth in appellant's complaint and all reasonable inferences that may be drawn from those facts. *Feingold v. Bell of Pennsylvania*, 477 Pa. 1, 4, 383 A.2d 791, 792 (1977); *Pennsylvania Liquor Control Board v. Rapistan, Inc.*, 472 Pa. 36, 42, 371 A.2d 178, 181 (1976).

*Bower v. Bower*, 531 Pa. 54, 57, 611 A.2d 181, 182 (1992).

 The issue in this case, whether the Cunninghams have standing to proceed with their reports of intention to adopt A.L.O. and N.A.W., is controlled by the applicability and interpretation of *In re Adoption of Hess*, 530 Pa. 218, 608 A.2d 10 (1992). Heretofore, it has been well-established in this Commonwealth that foster parents do not have standing to seek adoption of their foster children when the child welfare agency does not consent to the adoption.[1] *See e.g., In re Adoption of S.C.P.*, 364 Pa.Super. 257, 527 A.2d 1052 (1987); *Priester v. Fayette County Children and Youth Services*, 354 Pa.Super. 562, 512 A.2d 683 (1986); and *In re: Crystal D.R.*, 331 Pa.Super. 501, 480 A.2d 1146 (1984). The agency's withholding of consent is not the significant aspect of this precept; rather, it is the nature of the limited relationship of the foster parents to the children. However, third parties who are not designated foster parents may seek adoption when they can establish that they stand in loco parentis to the child. *In re Adoption of J.M.E.*, 416 Pa.Super. 110, 610 A.2d 995 (1992). The significance and parameters of the foster parent relationship were set forth in *Crystal D.R.* and contrasted in *J.M.E.* We need not restate them here.

The trial court determined that *Hess* is applicable to the instant case. In its opinion, the trial court concluded:

1. Likewise, third parties lack standing to seek custody as against a natural parent except through a dependency proceeding, *Gradwell v. Strausser*, 416 Pa.Super. 118, 610 A.2d 999 (1992), or unless the third party can establish that he stands in loco parentis to the child. *Rosado v. Diaz*, 425 Pa.Super. 155, 624 A.2d 193 (1993), *see also Van Coutren v. Wells*, 430 Pa.Super. 212, 633 A.2d 1214 (1993).

> While it is true that *Hess* is a case that was instituted by grandparents rather than foster parents, the language in those cases [sic] suggests that the holding is broad enough to encompass any "party" who finds himself in the above quoted posture and needs recourse to the court to determine whether or not the withholding of consent by the agency is reasonable.

Trial court opinion, 2/23/93, at 2. The "posture" identified by the trial court referred to a third party desiring to adopt a child when the child welfare agency refuses to consent. The trial court supported its position with the assertion that the Supreme Court used the term "party" rather than "grandparent" throughout the opinion. The trial court then stated that the "most compelling part of the holding states that, '. . . they should be permitted to participate in the proceeding just as any other individual or individuals who seek to adopt a child.' " Trial court opinion, 2/23/93, at 2.

We are not persuaded by the trial court's reasoning and believe that the factual scenario of *Hess* was an exception to the general rule and is limited to the familial relationship which was present in that case. In rejecting the trial court's reasoning, we note initially that Chief Justice Nix did not use the term "party" throughout the opinion as opposed to the designation "grandparent." There are one or two instances when "party" is used because the word "grandparent" does not fit. A reading of the opinion clearly establishes that the Court considered the standing issue as it relates to a family member, who "has lived with the child, has obtained custody of his or her siblings, and has averred that the child's best interests are contrary to those asserted by the agency. . . ." *In re Adoption of Hess, supra,* 530 Pa. at 221, 608 A.2d at 12. Moreover, the fact that the Court indicated that a grandparent should be permitted to participate in the proceeding "just as any other individual" does not mean that a party need not establish his standing to proceed in a case.

Before we analyze whether *Hess* is applicable to the present matter, its factual background must be examined. Melanie and Matthew Hess were four and five years old, respectively,

at the time litigation commenced. They had four siblings who were not involved in the case. At various times in their young lives, Melanie, Matthew, their siblings, and their natural parents resided with their maternal grandparents, the appellees in the case. Substantial care for all of the children was provided by the grandmother. In 1985, the natural parents removed the family from the appellees' home. The grandparents later learned, however, that the children had been placed with a social service agency. Several of the children were returned to the care of the grandparents, but Melanie and Matthew were not; instead, they returned to the care of their natural parents in 1986. By the spring of 1987, the two children again were removed from their parents care and placed with the agency. The grandparents contacted the agency and obtained custody. In June, 1987, the natural father removed Melanie and Matthew from the grandparents' home and placed them with Lancaster County Children and Family Services. Later efforts by the grandparents to have the two children returned to them were futile.

The natural parents then voluntarily relinquished their parental rights to Melanie and Matthew. Custody was awarded to Lancaster Family Services which placed the children with proposed adoptive parents who filed petitions to adopt. Upon learning this, the grandparents sought to intervene, to stay the adoption, and to obtain custody of the children. Lancaster Family Services filed preliminary objections alleging the grandparents lacked standing to intervene, which the trial court sustained. This court reversed, and the Pennsylvania Supreme Court affirmed our decision.

In analyzing the applicability of *Hess* to the instant case, we have no doubt that the Supreme Court clearly was persuaded by the significance of the relationship of the grandparents to the children. The Court repeatedly emphasized this fact. The entire analysis by the Supreme Court revolved around the relationship of the appellees to the children. Indeed, the Court relied upon specific statutory provisions exclusive to grandparents. For example, the Court noted that 23 Pa.C.S. § 2531(c) specifically envisions that grandparents might

choose to adopt their grandchildren. The Court stated, "[T]he Act contemplates that a grandparent might choose to adopt his or her grandchild, and allows the grandparent to benefit from the relationship to the child by relieving the grandparent of the obligation to file a Report of Intention to Adopt." *In re Adoption of Hess, id.,* 530 Pa. at 224, 608 A.2d at 13. The Court went on to state that the various requirements indicate "that a relationship between the proposed adoptive parent and the adoptee is a relevant consideration." *Id.* There is no such relationship in the instant case.

Moreover, the Supreme Court was disturbed by the fact that the trial court determined that the grandparents had no interest in the proceedings. The Supreme Court held that the grandparents should have been permitted to intervene and noted, "The trial court's determination, however, begs the question of whether the grandparents were ever entitled to inject themselves into a series of proceedings designed to effectuate the best interests of two of their grandchildren." *Id.,* 530 Pa. at 223, 608 A.2d at 12. The Court obviously was persuaded by the fact that the grandparents' efforts consistently were rebuffed by Lancaster Family Services which refused to give them any information until well after the parental rights had been terminated.

The majority in *Hess* also examined the Children and Minors Act, 23 Pa.C.S. § 5301 *et seq.* in resolving this issue. The Court noted the significance of the fact that the act demonstrates the legislature's intent to encourage the maintenance of family relationships. Thus, again, the Court focused on the familial relationship of the grandparents to the children.

Finally, in discussing the parameters of the majority's holding, Justice Zappala, in a dissenting opinion, stated, "I cannot conceive that the majority would allow an individual who was unrelated to the child to intervene in the proceeding. . . ." *In re Adoption of Hess, id.,* 530 Pa. at 233, 608 A.2d at 18 (Zappala, J., dissenting). This is but another confirmation for the position that it was the grandparents' familial relationship to the children which controlled the outcome of the case.

We believe *Hess* is confined to the facts and considerations of that case, none of which is present herein. Instead, the established law in this Commonwealth, as most recently reaffirmed in *In re Adoption of S.C.P., supra,* controls the result in this case. We held in *S.C.P.* that 23 Pa.C.S. § 2531(a), which describes who may file a report of intention to adopt, does not encompass foster parents. We reiterated, "[F]oster parents have no standing to adopt a child placed in their custody until the absolute, unequivocal, written consent of the children's legal custodian or other person whose consent was necessary was given." *Id.,* 364 Pa.Super. at 260, 527 A.2d at 1054, quoting *Priester v. Fayette County Children and Youth Services, supra,* 354 Pa.Super. at 566, 512 A.2d at 684. As we stated in *S.C.P.,* application of this holding to the facts of the instant case effectively resolves this appeal.

Order reversed; the preliminary objections of Chester County Children and Youth Services are sustained; the reports of intention to adopt filed by Donald and Middie Cunningham are dismissed.

BECK, J., files a dissenting opinion.

BECK, Judge, dissenting.

Because I believe our supreme court's decision in *In re Adoption of Hess,* 530 Pa. 218, 608 A.2d 10 (1992) should be interpreted to confer standing on appellees in this case, I must dissent. I disagree with the majority that *Hess* should be narrowly construed so as only to accord grandparents standing; I believe the *Hess* decision represents a recognition that in the ever-evolving arena of child custody and adoption, a party who has shown sincere and sustained concern for the welfare of a child should be permitted to appear in court and seek adoption.

Unlike the majority, I do not think that the *Hess* court was persuaded only by the significance of the grandparental relationship in reaching its decision. I am certain that the intensity of the grandparents' concern for the children was a significant factor in the case. However, I believe that foster

parents are just as capable of establishing genuine concern for their foster children and, further, of proving that their home is the appropriate place for a child to be permanently placed, notwithstanding a contrary opinion by the agency involved. In addition, I am mindful that the grant of standing does nothing more than allow an interested party to be heard in court; it surely does not amount to an award of custody nor does it change at all the standards by which the court decides the issue. Indeed the "best interests" of the child remain the paramount concern in these matters.

The *Hess* court's references to other statutes which envision a grandparent's desire to adopt a grandchild do support the holding on the case, but do not preclude the notion that foster parents also frequently move to adopt the children entrusted to their care. The idea that foster parents may one day wish to permanently adopt a foster child is not a novel one.

The majority further states that "the [*Hess* ] Court obviously was persuaded by the fact that the grandparents' efforts consistently were rebuffed by Lancaster Family Services which refused to give them any information until well after the parental rights had been terminated." In my opinion, any disapproval by the *Hess* court of the manner in which the agency proceeded in the case does not serve to bolster the argument that the *Hess* holding includes only grandparents, but instead supports the idea that an agency may act improperly in withholding its consent and, accordingly, an aggrieved party should be permitted to appear in court to contest the agency's decision.

It is clear that in the absence of *Hess,* we would be required to hold that appellees have no standing in this matter. As noted by the majority, the law prior to *Hess* explicitly states that foster parents have no standing to seek adoption of their foster children. I would hold, however, that *Hess* represents a change in the law and that its holding should be interpreted to confer standing on appellees.

I strongly agree with the *Hess* court that "[a] child's interests are best served when all those who demonstrate an

interest in his or her welfare are allowed to be heard." *Hess*, 530 Pa. at 227, 608 A.2d at 15. Here, appellees have acted as parents for these children for a period of years and, in the case of one of the children, virtually since birth. In my opinion, they have demonstrated an interest in the children's welfare and should be permitted to appear in court. It may be that the trial court will agree with the agency that appellees are not an appropriate couple with whom to permanently place the children. However, I would not deny appellees an opportunity to persuade the court otherwise, particularly where what they are requesting is an opportunity to prove that they can provide a safe and nurturing home for the children.