685 A.2d 1034

**In re ADOPTION OF Baby Boy WIMS, a/k/a Milon Wims.**

**Appeal of Steven James VOLK and
Christine Ann Volk, his wife.**

Superior Court of Pennsylvania.

Argued Oct. 9, 1996.

Filed Nov. 26, 1996.

Craig B. Bluestein, Jenkintown, for appellants.

Steven G. Dubin, Churchville, for participating parties.

Before TAMILIA, SCHILLER, and MONTEMURO,* JJ.

TAMILIA, Judge:

Steven and Christine Volk, husband and wife, take this appeal from the May 24, 1995 Order denying their motion to dismiss the Petition for Adoption and Report of Intention to Adopt filed by appellees, John and Lorrie Nelson, husband and wife. The Volks were granted the right to file an immediate appeal from this interlocutory Order as the matter involves a controlling question of law, namely standing.

According to the record, on May 23, 1990, Baby Boy Wims, born May 16, 1990, was physically placed by his biological mother with Option of Adoption, Inc. (agency), a private adoption agency, which now is defunct and bankrupt. Shortly thereafter, on June 20, 1990, the agency placed the child with the Nelsons, residents of the state of Washington. On October 15, 1990, the parental rights of the biological mother were terminated by court Order and legal custody was granted to

* Retired Justice assigned to the Superior Court.

the agency.[1] On December 16, 1993, upon request of the agency, an Order was entered removing the child from the Nelsons and, on December 17, 1993, the child was placed with the Volks with whom custody remains.

On May 5, 1994, the Volks filed their Report of Intention to Adopt and their Petition for Adoption, which was consented to by the agency on June 21, 1994. On May 25, 1994, the Nelsons filed their Report of Intention to Adopt and Petition for Adoption, and counsel subsequently was appointed by the trial court to represent the Nelsons. Both parties thereafter filed preliminary objections to the pleadings of each other with the Volks objecting to the Nelsons' standing. The trial court dismissed the Nelsons' preliminary objections, but ruled they had standing, to which the Volks thereafter filed the present appeal. In support of its decision, the trial court determined both parties, as prospective adoptive parents, had custody of the child for an extended period of time. Furthermore, without benefit of information in the possession of the agency, the court decided a full trial would be necessary to determine what would promote the welfare of the child.

On appeal to this Court, the Volks claim the Nelsons failed to show they will suffer an immediate, direct and substantial injury if not allowed to proceed, and that they are aggrieved or adversely affected by the Order. Furthermore, without the consent of the agency to adopt the child, they lack standing. The Volks also claim when the Nelsons filed a report of intent to adopt, they did not have custody of the child nor was there any plan to return the child to them, thus pursuant to the Adoption Act,[2] they did not have the right or standing to pursue the adoption.

Initially, we have discussed standing as follows:

The question of standing is rooted in the notion that for a party to maintain a challenge to an official order or action, he must be aggrieved in that his rights have been invaded or infringed. The law of standing provides that one cannot

1. The biological father apparently is unknown.

2. 23 Pa.C.S. § 2101 et seq.

evoke the jurisdiction of the court to enforce private rights or to maintain a civil action for the enforcement of such rights, unless he or she has, in an individual or representative capacity, some real interest in the cause of action, or a legal right, title or interest in the subject matter or controversy.

*Jackson v. Garland,* 424 Pa.Super. 378, 383, 622 A.2d 969, 971 (1993) (citations omitted). "An aggrieved party is one who has a direct, immediate, pecuniary and substantial interest in the subject matter of the litigation." *Insilco Corp. v. Rayburn,* 374 Pa.Super. 362, 372, 543 A.2d 120, 125–126 (1988). In the instant case, appellees / Nelsons are not the parents or grandparents of the child and thus, as third parties, they may only have standing to seek adoption if they can establish that they stand in loco parentis to the child. *Chester County CYS v. Cunningham,* 431 Pa.Super. 421, 636 A.2d 1157 (1994), affirmed 540 Pa. 258, 656 A.2d 1346.

> The phrase "in loco parentis" refers to a person who puts himself in the situation of assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of "in loco parentis" embodies two ideas: first, the assumption of a parental status, and second, the discharge of parental duties.

*Cardamone v. Elshoff,* 442 Pa.Super. 263, 275, 659 A.2d 575, 581 (1995) (citations omitted).

 There is no question the Nelsons stood in loco parentis to the child from the time they obtained physical custody of him (June 20, 1990) until the agency removed the child from their home on December 16, 1993. The Nelsons, however, did not file their intent to adopt petition for more than five months after the child had been placed with the Volks. At this point in time, they had no contact with the child, did not have physical custody of him and were not responsible for any decisions made on his behalf. Thus, they had no parental relationship with the child. Moreover, the Adoption Act provides that "[e]very person now having or hereinafter receiving or retaining custody or physical care for the purpose of or with the intention of adopting a child ..."

may file a Report of Intent to Adopt. Section 2531(a), Report of Intention to Adopt. At the time the Report was filed by the Nelsons, on May 25, 1994, they did not have custody of Baby Boy Wims, and it was clear they were not going to receive custody in the future. Furthermore, the Adoption Act also provides that consent to adoption is required from the child's guardian or the persons having custody of the child. Section 2711(a)(5), Consents necessary to adoptions. The record reflects the Nelsons did not have the consent of the persons with physical custody or the agency that functioned as the legal guardian.[3] Accordingly, they could not properly file a petition for adoption.[4]

■ We shall also look to the actions of the Nelsons to provide insight as to whether they actually assumed or intended to assume the obligations incident to the parental relationship necessary to achieve "in loco parentis" status. *Cardamone*, supra. Initially, as previously noted, they did not file their petition of intention to adopt until more than five months after the agency removed the child from their home and only after the Volks filed their own petition. Secondly, we find nothing in the record which reflects any proceedings, initiated by the Nelsons, when they had custody, to contest the actions of the agency in removing the child from their home.[5] Thirdly, the record reveals the Nelsons, while still having physical

3. We note the agency, as legal custodians of Baby Boy Wims, did consent to the adoption petition filed by the Volks.

4. Appellees have attempted to cite the Superior Court's decision in *Mollander v. Chiodo*, 450 Pa.Super. 247, 675 A.2d 753 (1996), in support of their argument regarding standing. Not only was *Mollander* consistently referred to as "Hollander", the case was cited improperly and the "quotes" therefrom were inaccurate, partial quotes taken out of context. Moreover, the appellants in *Mollander*, unlike appellees here, had custody of the subject child when their intention to adopt was filed. That distinction alone is sufficient to distinguish the *Mollander* case from this one. Also, we do not believe the Supreme Court would agree with appellees that this Court's *Mollander* decision in any way supersedes their resolution of *Chester County CYS v. Cunningham*, 540 Pa. 258, 656 A.2d 1346 (1995).

5. According to the record, the agency removed the child from the home based upon allegations of abuse and neglect and the fact another child under the Nelsons' care was removed from their home due to "failure to thrive."

custody of the child, indicated to officials of the Attorney General of Washington that they no longer planned on adopting the child but rather chose to pursue legal guardianship. This decision apparently was based, in part, on the reduction in the amount of money the Nelsons would receive from the state of Washington for the child's special needs if they were to formally adopt him. These actions clearly do not manifest the intent of one assuming parental status or the discharge of parental duty necessary to achieve "in loco parentis" standing.

In light of the evidence available, we find the Nelsons lacked the necessary in loco parentis status and thus did not have standing to pursue the adoption of Baby Boy Wims. According, we reverse the Order of May 24, 1995 denying appellants' motion to dismiss appellees' Report of Intention to Adopt and Petition for Adoption and we remand this case for proceedings consistent with this Opinion.

Order reversed.

Jurisdiction relinquished.