## In the Matter of the ADOPTION OF A.M.T. and C.C.T., Minors.

Superior Court of Pennsylvania.

Submitted Jan. 7, 2002.

Filed June 27, 2002.

Edward J. Hatheway, Meadville, for appellants.

R. Charles Thomas, Meadville, for A.M.T. and C.C.T.

Before DEL SOLE, P.J., HUDOCK and CAVANAUGH, JJ.

HUDOCK, J.

¶ 1 This is an appeal from the order denying J.S. and J.S., husband and wife's, (Appellants) petitions to adopt, their nieces, A.M.T. and C.C.T., on the basis that the petitions were not accompanied by a consent from the guardian of the children and Appellants otherwise did not have standing to proceed with the petitions. We reverse and remand for proceedings consistent with this opinion.

¶ 2 T.W.T. (Father) and T.M.T. (Mother) were the natural parents of R.M.T., age 15, (born 11/25/85), A.M.T., age 6 (born 10/15/95), and C.C.T., age 4 (born 10/8/97).

The family had resided in Meadville, Pennsylvania. Mother and Father separated and Mother obtained a protection from abuse order against Father. On November 19, 2000, Father entered the home where Mother and the three children resided and fatally shot Mother. Father then took his own life. Thereafter, all three children went to live with the maternal grandmother, A.F. (Grandmother) and maternal aunt, J.M.F., who also lived in Meadville.

¶ 3 On December 14, 2000, Appellants, the paternal aunt and uncle of the children, who reside in Pittsburgh, filed a complaint for custody of the three children in the Crawford County Court of Common Pleas. On December 22, 2000, Grandmother and J.M.F. filed preliminary objections to the complaint, alleging that Appellants lacked standing. On that same date, Grandmother presented a petition for guardianship pursuant to 20 Pa.C.S.A. section 5111(a), requesting that J.M.F. be appointed guardian for the two youngest children. The petition was granted that date and J.M.F. was appointed guardian of A.M.T. and C.C.T. The eldest child, R.M.T., being over the age of 14, refused to execute a consent for the appointment of J.M.F. as his guardian. *See* Pa.O.C.R. 12.5(a) (providing that petition for the appointment of a guardian shall be filed by the minor, if the minor is over the age of 14).

¶ 4 On January 9, 2001, W.B. and D.C.B., maternal aunt and uncle, who reside in New Kensington, filed a petition for adoption of A.M.T. and C.C.T. Attached to the petition was the consent of the guardian, J.M.F. (D.C.B.'s sister), pursuant to 23 Pa.C.S.A. section 2711.[1] On Feb-

---

1. Section 2711, entitled "Consents necessary to adoption", provides in pertinent part:

(a) **General rule.**—Except as otherwise provided in this part, consent to an adoption shall be required of the following:

ruary 21, 2001, Appellants filed a petition for stay of the adoption hearing scheduled for March 1, 2001. In their petition, Appellants apprised the court of the existing custody proceedings and requested that the adoption hearing be stayed pending a hearing on Grandmother and J.M.F.'s preliminary objections in the custody action. The orphans' court granted the stay and rescheduled the adoption hearing for June 8, 2001.

¶ 5 On April 2, 2001, at the hearing on the preliminary objections to Appellants' custody complaint, the parties agreed that both families wanted to adopt the children and rather than have competing custody and adoption actions pending at the same time, Appellants would withdraw their custody complaint and would instead file a petition to intervene in the adoption proceedings. On April 2, 2001, Appellants presented the petition to intervene and it was granted on that date. On May 23, 2001, Appellants filed a petition for adoption of A.M.T. and C.C.T. Thereafter, W.B. and D.C.B. filed a motion to strike Appellants' petition for adoption on the basis that Appellants failed to file their petition for adoption within the time frame set forth in the court's order permitting Appellants to intervene. A hearing was held on the motion to strike on June 1, 2001. On June 4, 2001, the court denied Appellants' petition for adoption of A.M.T.

and C.C.T. on the basis that that petition was not accompanied by a consent from the guardian of the children and that Appellants otherwise did not have standing. This appeal followed.

¶ 6 Following this appeal, Appellants filed a Motion for Stay of the Adoption hearing on W.B. and D.C.B.'s petition.[2] The court denied Appellant's motion and proceeded with the adoption hearing. On August 24, 2001, final decrees were entered approving the adoption of A.M.T. and C.C.T. by W.B. and D.C.B.[3]

■ ¶ 7 On appeal Appellants present for our consideration the sole issue of "[w]hether the [orphans'] court erred when it denied [Appellants'] adoption petition for the reason that it did not contain a consent form from the court-appointed temporary guardian indicating that she consented to [Appellants'] adopting the subject minor children?" Appellants' Brief at 6. Appellants assert that our Supreme Court's decision in *In re Adoption of Hess*, 530 Pa. 218, 608 A.2d 10 (1992) is controlling.

¶ 8 In *Hess*, the grandparents of two children placed in the custody of a family service agency, following the voluntary termination of the natural parents rights, sought to intervene in an adoption proceeding of the children and stay the action in order to obtain custody of their grand-

(5) The guardian of the person of an adoptee under the age of 18 years, if any there be, or of the person or persons having the custody of the adoptee, if any such person can be found, whenever the adoptee has no parent whose consent is required.

2. The custody hearing was rescheduled from June 8, 2001, until July 11, 2001, by the court, due to a conflict in its schedule.

3. With regard to the eldest child R.M.T., a petition was filed by D.C.B. requesting that she be appointed R.M.T.'s guardian. Thereafter, R.M.T. filed a petition, in compliance with Pa.O.C.R. 12.5(a), requesting that Appel-

lants be appointed his guardians. On September 19, 2001, Appellants were appointed temporary guardians for R.M.T. pending an evidentiary hearing on both petitions. On October 4, 2001, after hearing testimony from the parties, the court granted R.M.T.'s petition and appointed Appellants to serve as permanent guardians for R.M.T. R.M.T. presently resides with Appellants at their home in Pittsburgh. We note that while the petitions and orders from these proceedings are not part of the certified record on appeal, the parties do not dispute their validity.

children. The family service agency filed preliminary objections alleging that the grandparents lacked standing to intervene. Specifically, the family service agency argued that since the rights of the children's natural parents had been terminated and the agency had custody of the children, its consent was required under 23 Pa.C.S.A. section 2711(a)(5) before an adoption could take place, and that it did not intend to consent to an adoption by the grandparents. The court sustained the preliminary objections and dismissed the grandparents' petition. This Court reversed. In determining that the grandparents had standing to intervene, we reasoned:

> The Adoption Act makes clear that the natural *parents* whose rights have been terminated may not participate in the adoption proceedings and do not need to receive notice of the adoption proceedings. 23 Pa.C.S. § 2521(a). However, the Adoption Act does not preclude other relatives of the child from participating in adoption proceedings after the rights of the child's parents have been terminated and before a final decree of adoption has been entered. Nor does it preclude other relatives from seeking to enforce rights they may have in connection with the child. On the contrary, a statute expressly provides that biological, or non-biological, grandparents continue to have the right to seek partial custody and visitation with a grandchild in certain circumstances *after the parents' rights have been terminated and until the child is adopted.* See 23 Pa.C.S. §§ 5311–5314. The Adoption Act also not only does not prohibit biological relatives from filing a petition for adoption after parental rights have been terminated, but expressly excuses certain biological relatives, including grandparents [and as in this case, aunts and uncles], from the

requirement of filing a "Report of Intention to Adopt[.]" 23 Pa.C.S. § 2531(c).

> That a decree terminating parental rights affects *only* the rights of the parents of a child, and not other relations of the child, is especially apparent when one considers that in many instances where the natural parents' rights have been terminated or where the natural parents have died, it is relations of the child who obtain custody of the child and/or adopt the child. Thus, while the Adoption Act completely and irrevocably severs any legal relationship between the parent and child, the Act does not necessarily sever the relationship between the child and relatives of the child other than the child's natural parents.

*In re Adoption of Hess,* 386 Pa.Super. 301, 562 A.2d 1375, 1377–78. The panel further stated:

> Where, as in the present case, there are competing allegations of the best interest of the child and where the court, without conducting a hearing by which it could receive evidence so that it could make a fully informed determination of the *BEST* interests of the child, summarily dispenses with one of the competing allegations of the child's best interest, and where no counsel has been appointed to represent *exclusively* the child's interest, we cannot conclude that the *BEST* interests of the child have necessarily been advocated and determined.

> In the present case, by summarily dismissing the appellants' Complaint for Custody, and by refusing them permission to intervene in the adoption proceedings, thereby precluding from the court's consideration information which may be relevant to the determination of the best interests of the children, the court has compounded and condoned the failure of the Agency to bring all rele-

vant information concerning the best interests of the children before the court in the adoption proceedings. The court, just as the Agency, has knowingly denied the children their right to have the course of their future determined upon consideration of all relevant information as mandated in [*Matter of Adoption of Sturgeon,* 300 Pa.Super. 92, 445 A.2d 1314, 1321–22 (1982) (providing that the best interest of the child is the sole standard for any decision on [the child's] adoption, and it is one that should be applied on full facts elicited during hearings in which all pertinent facts are placed before the court)]. The court has preliminarily barred the presentation of potentially relevant evidence concerning the *BEST* interests of the children, and has thereby rendered it impossible for it to make a reasoned determination of the children's *BEST* interests on the basis of *ALL* of the possibly relevant evidence bearing on the ultimate and vital issue before it.

*Hess,* 562 A.2d at 1381. Our Supreme Court, in affirming the reversal of the orphans' court order, placed great emphasis on the familial relationship between the grandparents and the children. In rejecting the agency's argument that the grandparents lacked standing due to their failure to obtain the requisite consent from the agency, as custodian of the children, the Court reasoned:

> [D]espite the agency's adamant insistence that it will not consent to the adoption by the grandparents, the Act makes clear that the court has the final burden of determining whose consent is necessary. The language of 23 Pa.C.S. § 2713(2) provides that "[t]he court, in its discretion, may dispense with consents other than that of the adoptee to a petition for adoption when … the adoptee is under 18 years of age and has no parent living whose consent is required."

> Under the facts of this case, the rights of the children's natural, living parents have been terminated, so their consent is not required. Accordingly, it seems clear that if the court determines that the agency's consent is being withheld unreasonably, the court may dispense with the requirement of § 2711(a)(5) that the agency consent to the adoption.

*Hess,* 530 Pa. at 226, 608 A.2d at 14. The Supreme Court, in concluding that the grandparents "should be permitted to participate in the proceeding just as any other individual or individuals who seek to adopt a child[,]" stated "[a] child's interests are best served when all those who demonstrate an interest in his or her welfare are allowed to be heard." *Id.* 530 Pa. at 227, 608 A.2d at 15.

¶ 9 In analyzing the applicability of *Hess* to the instant case, we are cognizant that, to date, the exception to the consent requirement on the basis of 23 Pa.C.S.A. section 2713, as set forth in *Hess,* has been applied only in cases where grandparents, who fail to obtain consent from the custodian of the children, are pursuing the adoption of their grandchildren. *See Adoption of: J.D.T. and J.T.T.,* 2002 PA-Super. 88 (Pa.Super.2002, filed January 16, 2002) (providing that grandparents had standing to intervene and pursue custody of grandchildren who were placed for adoption through Children and Youth Services even where the relationship between them and their grandchildren did not include periods of extended custody or frequent visitation); *In re Adoption of D.M.H.,* 452 Pa.Super. 340, 682 A.2d 315 (1996) (finding that grandmother was permitted to intervene into existing adoption proceedings and pursue adoption of grandchild in accordance with *Hess* ). We also recognize that the Courts have clearly rejected attempts to extend the application of *Hess* to third parties who do not have a

familial relationship with the adoptees. *See In re Adoption of S.P.T.*, 783 A.2d 779 (Pa.Super.2001) (holding that biological mother who had previously voluntarily terminated her parental rights to her child was a third party and lacked standing to bring adoption petition for the child when adoptive parent died); *In re Adoption of Wims*, 454 Pa.Super. 498, 685 A.2d 1034 (1996) (finding that former foster parents of child were third parties and did not have standing to pursue an adoption petition of child without consent of persons with physical custody of the child or establishing that they stood in *loco parentis* to child); *Chester County Children and Youth Services v. Cunningham*, 431 Pa.Super. 421, 636 A.2d 1157 (1994), *affirmed by an evenly divided court*, 540 Pa. 258, 656 A.2d 1346 (1995) (holding that foster parents lacked standing to seek adoption of their foster children where child welfare agency did not consent to adoption and foster parents were not related to foster children).[4]

¶ 10 However, our appellate courts have not previously been requested to apply the holding in *Hess* to a factual situation similar to that presently on appeal, namely, where both prospective adoptive families have a close familial relationship with the adoptees.[5] In this instance, the deceased parents' siblings have filed competing petitions for the adoption of their nieces. While Appellants, the paternal aunt and uncle, were the first to file a complaint for custody of the children, the maternal relatives were the first to file a petition for guardianship, resulting in the maternal aunt, J.M.F., being appointed guardian. As guardian of the children, J.M.F., thereafter provided consent pursuant to 23 Pa. C.S.A. section 2711(5) for the adoption of the children by her sister and brother-in-law, D.C.B. and W.B. While the orphans' court granted Appellants the right to intervene in the existing proceedings, it denied their petitions to adopt the children on the basis of their failure to obtain consent by the guardian. Thus, while Appellants could have testified at the hearing on W.B. and D.C.B's petition to adopt with regard to evidence pertaining to W.B. and D.C.B., they could not have testified as to why it would be in the best interests of the children to be adopted by Appellants, who stand in a similar degree of consanguinity to the children as do W.B. and D.C.B.

**4.** Thus, the general rule remains that, to have standing to file a petition for adoption, a third party must either establish that he or she acts currently in *loco parentis* to the prospective adoptee or has obtained the written consent from the guardian of the adoptee. *In re Adoption of S.P.T., supra; In re Adoption of Wims, supra; Chester County Children and Youth Services, supra.*

**5.** In their brief, W.B. and D.C.B. argue that the case of *In re Adoption of S.P.T., supra*, is dispositive of this appeal. We, however, find W.B. and D.C.B.'s reliance misplaced, as that case is clearly distinguishable from the facts of the within action. In *Adoption of S.P.T.* the biological mother voluntarily terminated her parental rights and consented to the adoption of her child by the child's paternal grandfather. Three years later grandfather died, and in his will he appointed his daughter testamentary guardian of the child, which appointment was later confirmed by the court. Mother and her new husband thereafter attempted to regain custody of the child and ultimately filed a petition to adopt with the court. Mother's petition was dismissed on the basis of lack of standing as she did not establish that she stood in *loco parentis* to the child, or that she had consent of the guardian to adopt the child. This Court found that when Mother terminated her parental rights she became a third party. Although she did not sever her biological relationship with the child, she no longer had a familial relationship with the child recognized by law. Unlike Mother in *Adoption of S.P.T.*, all parties in this action have a familial relationship with the children that has not been severed as a result of the death of the children's parents.

Consequently, as in *Hess*, the court in the present case "has preliminarily barred the presentation of potentially relevant evidence concerning the *BEST* interests of the children, and has thereby rendered it impossible for it to make a reasoned determination of the children's *BEST* interests on the basis of *ALL* of the possibly relevant evidence bearing on the ultimate and vital issue before it." *Hess*, 562 A.2d at 1381. This is especially true here where the eldest sibling of A.M.T. and C.C.T. chose Appellants as his guardians and now resides with them. While the court permitted Appellants to intervene, it should have also permitted them "to participate in the proceeding just as any other individual or individuals who seek to adopt a child." *Hess*, 530 Pa. at 227, 608 A.2d at 15. To find otherwise under the facts of this case, not only ignores what is in the best interest of the children, but unjustly rewards the extended family members who first obtain guardianship of their relative's children by granting them the power to control the adoption process. Accordingly, we find *Hess* applicable to the facts of the present case and, as such, we vacate the adoption decree, reverse the order denying Appellants' petition to adopt on the basis of standing, and remand for further proceedings.

¶ 11 Order reversed. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.