In re: ADOPTION OF: J.E.F.

In re: Adoption of: C.J.U.

In re: Adoption of: N.G.F

Appeal of: S.B., Aunt and D.B., Uncle.

Superior Court of Pennsylvania.

Argued Oct. 26, 2004.

Filed Nov. 29, 2004.

Reargument Denied Feb. 7, 2005.

Andrew D. Glasgow, Pittsburgh, for appellants.

David J. DiCarlo, Washington, for appellees.

Joyce A. Hatfield–Wise, Washington, for Children and Youth Services of Washington County.

BEFORE: BENDER, PANELLA and POPOVICH, JJ.

OPINION BY BENDER, J.:

¶ 1 S.B. (Aunt) and D.B. (Uncle) (collectively Appellants) appeal from the order dismissing their petitions to adopt their niece and nephews, C.J.U., J.E.F. and N.G.F.[1] The court's order was based on a determination that Appellants lacked standing because they failed to obtain the requisite consents to adoption from the Washington County Children and Youth Agency (CYA or Agency). The order also indicated that CYA's motion to de-consolidate was rendered moot by the dismissal of Appellants' petitions.[2] We reverse and remand for further proceedings.

¶ 2 On October 2, 2003, the mother's and both fathers' parental rights to the three children were terminated, with CYA maintaining custody of the children, two of whom continued placements with foster families and the third residing in a residential group home. Appellants, who live in Maryland, filed petitions for adoption of the three children on November 26, 2003. C.J.U., the child residing in the group home, was over 12 years old at the time the petition was filed, and he had signed a consent for adoption by his Aunt and Uncle, which was attached to Appellants' petitions. On the same date, as intermediary for the two sets of foster parents, CYA filed petitions for the adoption of the two younger children. The court consolidated the petitions and set a date for a hearing to be held on January 28, 2004. The court also appointed a guardian *ad litem* to represent the children's interests.[3]

¶ 3 On January 21, 2004, one week prior to the scheduled adoption hearing, CYA filed a motion to dismiss Appellants' petitions for adoption. CYA also filed a motion requesting de-consolidation of the adoption proceedings, so that even if Appellants' petitions were not dismissed, Appellants would be prohibited from participation in hearings on the foster parents' petitions. Appellants filed responses to CYA's motions with new matter to which CYA responded. Both Appellants and CYA filed briefs to support their positions and arguments were heard by the court. On April 6, 2004, the court dismissed Appellants' petitions to adopt, indicating that

---

1. L.F. gave birth to the three children, C.J.U, born July 31, 1991, J.E.F., born January 10, 1996, and N.G.F., born February 23, 1997, who are the subject of the contested adoption proceedings presently before this Court. K.F. is the biological father of J.E.F. and N.G.F. and W.U. is the biological father of C.J.U.

2. By order dated May 24, 2004, this Court *sua sponte* consolidated the three appeals and directed the parties to brief and argue the issues as if the three appeals were one.

3. According to Appellants' brief and their petitions for adoption, they had acquired visitation rights with the children, but that visitation ended when allegations of sexual abuse were levied against Aunt. Previously, by letter dated April 16, 2002, the Washington County (Maryland) Department of Social Services (DSS) had approved the placement of the children with Appellants upon receipt of a favorable recommendation of the children's therapists. On November 18, 2002, DSS issued a decision following an investigation of the abuse allegations, concluding that the allegations were unsubstantiated. DSS also informed Aunt that the case was closed. However, by letter dated March 12, 2003, DSS rescinded its earlier approval for adoption by Aunt and Uncle. Appellants also indicated that proceedings related to the abuse allegations were conducted before the Juvenile Division of the Court of Common Pleas of Washington County, Pennsylvania, which resulted in a finding that the sexual abuse allegations had no merit. We note that only the letters from DSS are a part of the certified record in this case, as they are attached as exhibits to Appellants' petitions for adoption. However, no documentation relating to any proceedings held in the Juvenile Division are included in this certified record.

"[Appellants] have failed to obtain the requisite consent to adoption and therefore lack standing to proceed under the Adoption Act. Accordingly, the Motion to De-Consolidate is rendered moot." Trial Court Order, 4/6/04.

¶ 4 Appellants now appeal to this Court, and raise the following issues for our review: [4]

I. Whether Appellants have standing to petition to adopt[?]

II. Whether CYA consent is required[?]

III. Whether the adoption proceedings should be deconsolidated and Appellants excluded[?]

Appellants' brief at 3.

¶ 5 Because Appellants' first two issues, concerning standing and an agency's consent are intertwined, we address them together. Specifically, the central issue involves CYA's consent, because if CYA had given its consent to Appellants, they would then have had standing to seek to adopt their niece and nephews.[5] Appellants first argue that the language of 23 Pa.C.S. § 2711(a)(5) ("Consents necessary to adoption") can not be construed to include an agency and that, therefore, CYA's consent is not required for them to have standing. Additionally, with reliance on *In re Adoption of Hess*, 530 Pa. 218, 608 A.2d 10 (1992), and *In re Adoption of A.M.T.*, 803 A.2d 203 (Pa.Super.2002), Appellants contend that in light of their familial relationship with the children they have standing to seek the adoption of their niece and nephews with or without CYA's consent, *i.e.*, they are not third parties in the context of the adoption proceedings involving their niece and nephews. Appellants further assert that, as an aunt and an uncle to

the children, their status as family was not lost when the children's biological parents' rights were terminated. Appellants also contend that, according to *Hess*, the Agency's opinions with regard to whom may adopt is limited by law and is subordinate to that of the court. Lastly, Appellants argue in the alternative that if CYA's consent is required, then it was unreasonably withheld.

¶ 6 Initially, we begin with the pertinent statutory provisions from the Adoption Act, 23 Pa.C.S. §§ 2101–2910, which are discussed by Appellants, CYA, and the guardian *ad litem* in their respective briefs. Section 2711 sets forth the general rule with regard to consents necessary to adoption as follows:

§ 2711. **Consents necessary to adoption**

(a) **General rule.**—Except as otherwise provided in this part, consent to an adoption shall be required of the following:

(1) The adoptee, if over 12 years of age.

. . . .

(5) The guardian of the person of an adoptee under the age of 18 years, if any there be, or of the person or persons having the custody of the adoptee, if any such person can be found, whenever the adoptee has no parent whose consent is required.

23 Pa.C.S. § 2711(a). In conjunction with section 2711, section 2713 provides for discretion on the part of the court to dispense with consents other than the consent of the adoptee. Section 2713 provides in pertinent part:

§ 2713. **When other consents not required**

---

4. As this appeal presents questions of law, our scope of review is plenary. *In re Adoption of R.B.F.*, 569 Pa. 269, 803 A.2d 1195, 1199 (2002).

5. Appellants do not assert that they have ever stood in *loco parentis* to their niece and nephews.

The court, in its discretion, may dispense with consents other than that of the adoptee to a petition for adoption when:

. . .

(2) the adoptee is under 18 years of age and has no parent living whose consent is required.

23 Pa.C.S. § 2713.

¶ 7 In the present case, the Orphans' Court order that terminated the parental rights of the three children's parents provided that "[t]he Agency shall maintain custody of the minor children until a Final Adoption Decree is entered." Order, 10/2/03. The basis for that order and its effect is controlled by section 2521 of the Adoption Act, which provides:

> (b) **Award of custody.**—The decree shall award custody of the child to the agency or the person consenting to accept custody under section 2501 (relating to relinquishment to agency) or section 2502 (relating to relinquishment to adult intending to adopt child) or the petitioner in the case of a proceeding under section 2512 (relating to petition for involuntary termination).
>
> (c) **Authority of agency or person receiving custody.**—An agency or person receiving custody of a child shall stand in loco parentis to the child and in such capacity shall have the authority, inter alia, to consent to marriage, to enlistment in the armed forces and to major medical, psychiatric and surgical treatment and to exercise such other authority

concerning the child as a natural parent could exercise.

23 Pa.C.S. § 2521(b), (c).

¶ 8 The court's award of custody of the three children to CYA in the October 2, 2003 order is essentially an appointment of the Agency to the position of guardian of the children in that the Agency was to stand in *loco parentis* to the children and had the right and the duty to make major decisions for each child. The term "guardian," which is used in section 2711(a)(5), is defined as "[o]ne who has the legal authority and duty to care for another's person or property, esp. because of the other's infancy, incapacity, or disability." BLACK'S LAW DICTIONARY 725 (8th ed.2004).

 ¶ 9 In construing the various sections of the Adoption Act together,[6] and noting the meaning of "guardian," we conclude that Appellants' argument that the statute is limited only to the consent of a natural person or persons must fail. Rather, we interpret subsection 2711(a)(5) to include an agency that stands in *loco parentis* to the children, as the trial court recognized by its order awarding custody to CYA. However, we also conclude that although the Agency's consent is required by section 2511(a)(5), the court has discretion to dispense with that requirement pursuant to section 2713(2). *See Hess*, 608 A.2d at 14 (stating that "the Act makes clear that the court has the final burden of determining whose consent is necessary").

¶ 10 Prior to addressing the other arguments presented here, we believe a rendition of the facts and reasoning set forth in both *Hess* and *A.M.T.* is pertinent to understanding our decision in the instant case. We begin with the *Hess* case, which dealt with grandparents who wished to

---

6. "Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a).

intervene in an adoption proceeding involving two of their grandchildren, who were in the agency's custody following the termination of the natural parents' rights. The agency alleged that the grandparents lacked standing to intervene because the agency refused to consent to the adoption of the children by the grandparents. This Court reversed and the Supreme Court affirmed that reversal, holding that the grandparents should be permitted to participate because, *inter alia*, "[a] child's interests are best served when all those who demonstrate an interest in [the child's] welfare are allowed to be heard." *Hess*, 608 A.2d at 15.

¶ 11 In *A.M.T.*, the paternal aunt and uncle petitioned to adopt their two nieces and a nephew following the murder/suicide of the children's natural parents. After the death of their parents, the children resided with their maternal grandmother and a maternal aunt, who was appointed guardian of the children by the court. Another maternal aunt and uncle, who procured consent from the guardian, also petitioned to adopt the children. After a hearing on the preliminary objections filed by the maternal aunt who was the guardian, the trial court denied the paternal aunt's and uncle's petition, concluding that their petition did not include the requisite consent from the guardian of the children and that, therefore, they did not have standing. This Court reversed, relying to a great extent on *Hess*. Our opinion indicated that the court should have allowed the paternal aunt and uncle to participate in the proceedings so that the best interests of the children could be explored.

¶ 12 Additionally, this Court in *A.M.T.* recognized that up until that point in time:

> the exception to the consent requirement on the basis of 23 Pa.C.S.A. section 2713, as set forth in *Hess*, ha[d] been applied only in cases where grandparents, who fail[ed] to obtain consent from

the custodian of the children, [were] pursuing the adoption of their grandchildren. *See Adoption of: J.D.T. and J.T.T.*, [796 A.2d 992 (Pa.Super.2002)] (providing that grandparents had standing to intervene and pursue custody of grandchildren who were placed for adoption through Children and Youth Services even where the relationship between them and their grandchildren did not include periods of extended custody or frequent visitation); *In re Adoption of D.M.H.*, 452 Pa.Super. 340, 682 A.2d 315 (1996) (finding that grandmother was permitted to intervene into existing adoption proceedings and pursue adoption of grandchild in accordance with *Hess* ). We also recognize that the Courts have clearly rejected attempts to extend the application of *Hess* to third parties who do not have a familial relationship with the adoptees. *See In re Adoption of S.P.T.*, 783 A.2d 779 (Pa.Super.2001) (holding that biological mother who had previously voluntarily terminated her parental rights to her child was a third party and lacked standing to bring adoption petition for the child when adoptive parent died); *In re Adoption of Wims*, 454 Pa.Super. 498, 685 A.2d 1034 (1996) (finding that former foster parents of child were third parties and did not have standing to pursue an adoption petition of child without consent of persons with physical custody of the child or establishing that they stood in *loco parentis* to child); *Chester County Children and Youth Services v. Cunningham*, 431 Pa.Super. 421, 636 A.2d 1157 (1994), *affirmed by an evenly divided court*, 540 Pa. 258, 656 A.2d 1346 (1995) (holding that foster parents lacked standing to seek adoption of their foster children where child welfare agency did not consent to adoption and foster parents were not related to foster children).[4]

[4] Thus, the general rule remains that, to have standing to file a petition for adoption, a third party must either establish that he or she acts currently in *loco parentis* to the prospective adoptee or has obtained the written consent from the guardian of the adoptee.

*A.M.T.*, 803 A.2d at 207–08 (footnote in original) (citations in footnote omitted).[7]

¶ 13 Despite the acknowledgement by the *A.M.T.* court that the exception to the consent requirement had only been applied in situations involving grandparents, it expanded the exception to an aunt and uncle. The *A.M.T.* court noted the Supreme Court's emphasis in *Hess* on the familial relationship between the grandparents and the children and quoted from this Court's opinion in *Hess* that explained our reasoning:

> The Adoption Act makes clear that the natural parents whose rights have been terminated may not participate in the adoption proceedings and do not need to receive notice of the adoption proceedings. 23 Pa.C.S. § 2521(a). However, the Adoption Act does not preclude other relatives of the child from participating in adoption proceedings after the rights of the child's parents have been terminated and before a final decree of adoption has been entered. Nor does it preclude other relatives from seeking to enforce rights they may have in connection with the child. On the contrary, a statute expressly provides that biological, or non-biological, grandparents continue to have the right to seek partial custody and visitation with a grandchild in certain circumstances after the parents' rights have been terminated and until the child is adopted. 23 Pa.C.S. §§ 5311–5314. The Adoption Act also not only does not

prohibit biological relatives from filing a petition for adoption after parental rights have been terminated, but expressly excuses certain biological relatives, including grandparents [and as in this case, aunts and uncles], from the requirement of filing a "Report of Intention to Adopt[.]" 23 Pa.C.S. § 2531(c).

That a decree terminating parental rights affects only the rights of the parents of a child, and not other relations of the child, is especially apparent when one considers that in many instances where the natural parents' rights have been terminated or where the natural parents have died, it is relations of the child who obtain custody of the child and/or adopt the child. Thus, while the Adoption Act completely and irrevocably severs any legal relationship between the parent and child, the Act does not necessarily sever the relationship between the child and relatives of the child other than the child's natural parents.

*A.M.T.*, 803 A.2d at 206 (quoting *In re Adoption of Hess*, 386 Pa.Super. 301, 562 A.2d 1375, 1377–78 (1989)).

¶ 14 With reliance on the above statutory language and case law, we respond to Appellants' other arguments, *i.e.*, whether their familial relationship to the children allows them to have standing without CYA's consent, and whether they have retained that familial status even though the children's biological parents' rights were terminated. We conclude that generally, before a party has standing to petition for adoption, consent is required of an agency that is the appointed guardian and/or has custody of the child(ren). However, we further recognize that the court in its discretion may dispense with the necessity of the agency's consent when there is a familial relationship or when the party seeking

---

7. We note that the three cases cited in *A.M.T.*, in which this Court refused to extend *Hess*, concerned petitioners who had the status of third parties.

to adopt has stood in *loco parentis* to the children. Moreover, we conclude that the termination of parental rights does not necessarily terminate the legal rights that other family members may have. Appellants here are not the "former" aunt and uncle to the children, *i.e.*, third parties, as CYA has stated; [8] rather they remain the children's aunt and uncle despite the termination of the parental rights of the children's natural parents.

■ ¶ 15 Having determined that the court below erred in denying Appellants' standing to participate in the adoption proceeding, we need not address Appellants' alternate argument that the withholding of consent by CYA was unreasonable. However, we do address whether the adoption proceedings must be de-consolidated.

¶ 16 Appellants argue that pursuant to *Hess* and *A.M.T.* the hearings on the separate petitions (Appellants' and CYA's petitions) should be heard together. We agree. In *Hess*, the Supreme Court indicated that the grandparents "should be permitted to participate in the proceeding just as any other individual or individuals who seek to adopt a child." *Id.* at 15. The court reasoned that "[a] child's interests are best served when all those who demonstrate an interest in his or her welfare are allowed to be heard." *Id.* Likewise, our Court in *A.M.T.* determined that the paternal aunt and uncle should have been allowed to participate in the proceedings and give evidence regarding the best interests of the children. The Court reasoned that to deny their participation "not only ignore[ed] what is in the best interest of the children, but unjustly reward[ed] the extended family members [maternal aunt and uncle] who first obtain[ed] guard-

ianship of their relative's children by granting them the power to control the adoption process." *Id.* at 209. This appears to be what the Agency in the present case is attempting to do.

■ ¶ 17 Regardless, we acknowledge CYA's counter argument, which relies on 23 Pa.C.S. § 2905 ("Impounding of proceedings and access to records") and 23 Pa.C.S. § 2910 ("Penalty for unauthorized disclosure"). However, we find these sections of the Act inapplicable to the present circumstances. They are not a tool to be used to limit participation in a proceeding whose goal is to gather for the court "ALL of the possible relevant evidence bearing on the ultimate and vital issue before it." *A.M.T.*, 803 A.2d at 209 (quoting *Hess*, 562 A.2d at 1381). It appears that CYA's contentions remain based upon the misconception that Appellants are non-parties to the adoption proceedings, *i.e.*, they cannot participate. Having concluded otherwise, we direct that the hearings on the petitions remain consolidated so that all potentially relevant evidence concerning the best interests of the children can be considered by the court. At the same time, we emphasize, as did the court in *Hess*, that granting standing to Appellants in no way guarantees that they will prevail. Rather, the import of their intervention helps assure that the children's interests will be best served "when all those who demonstrate an interest in [the children's] welfare are allowed to be heard." *Hess*, 608 A.2d at 15.

¶ 18 Accordingly, we reverse the court's order denying Appellants' petitions to adopt on the basis of standing and remand for further proceedings.

---

8. CYA asserts in its brief that due to the termination of the birth parents' rights, "[b]y operation of law, [Appellants] were rendered third parties to the proposed adoptees." CYA's brief at 7. To support this statement,

CYA relies on a statement in a dissenting opinion in *Hess*, 608 A.2d at 16, which is contrary to the majority's position, which was followed in *A.M.T.*

¶ 19 Order reversed. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.