**In re Adoption of E.M.S.**

*Andrew Shaw,* for petitioners.
*Cindy Garman,* guardian ad litem.
*David Natan,* for LCC&YSSA.

HOBERG, *J.,* January 7, 2008—The matter presently before the court stems from the filing of a report of intention to adopt E.M.S. [redacted] by petitioners T. D. and R. D. [redacted], husband and wife. E.M.S. is a 9-year-old boy who was born on May 10, 1998. He suffers from Hunters Syndrome, a genetic disorder which affects E.M.S.'s speech and mental functioning. E.M.S. is currently in the custody of the Lancaster County Children and Youth Social Service Agency, which has not consented to the adoption of E.M.S. by the petitioners. The agency asserts that the petitioners lack standing to adopt. Petitioners assert that the agency's refusal to consent to the adoption does not deny them standing and that they are entitled to adopt E.M.S., assuming that the court finds the adoption in the best interests of E.M.S.

On October 18, 2007 this court held a hearing to determine whether the petitioners are entitled to standing. This court finds, for reasons more fully set out below, that the petitioners do not have standing, despite the agency's failure to consent to the adoption. Therefore, this court dismisses the report of intention to adopt filed by petitioners.

The facts in this case are straightforward and, on a whole, not disputed by the parties. In fact, the petitioners, the agency and the guardian ad litem, who serves as representative for this child through her appointment in the dependency proceeding, all signed a joint stipulation setting forth almost all of the facts. See court exhibit 1.

E.M.S. was placed with the petitioners, by the agency, on or about November 17, 2004. At that time, the agency believed that the petitioners were a pre-adoptive home for E.M.S. The parental rights of E.M.S.'s biological parents were terminated by this court on February 2, 2006.

At the time of the termination, the petitioners had begun the process of adopting E.M.S., a process then supported by the agency and the Bair Foundation.

However, on August 28, 2006, other foster children in petitioners' home made a report of abuse. This alleged abuse was perpetrated by one of the petitioners against E.M.S. and another foster child in the home. As a result of the report, the agency removed E.M.S. from the home that day.

The Department of Public Welfare investigated the report and determined it to be unfounded. On October 3, 2006, which was subsequent to the unfounded report, the agency notified the petitioners that they would not be returning E.M.S. to their home. See petitioners' exhibit no. 1. On October 4, 2006, the Bair Foundation caseworker met with the petitioners and informed them that their residence would be closed as a foster home. See agency's exhibit no. 3. By correspondence dated

October 5, 2006, the Bair Foundation confirmed this decision in writing. See agency's exhibit no. 2.

As of the time of the October 18, 2007 hearing, petitioners had not filed any administrative appeals of the agency's refusal to return E.M.S. to their care. Petitioners had not filed any appeals of the closing of their residence as a foster home by the Bair Foundation. Petitioners have not seen E.M.S. since he was removed from their care eight months prior to the filing of their report of intention to adopt.

The agency did not consent to the petitioners' report of intention to adopt filed in April 2007. Petitioners assert that the agency's refusal to consent to the report of intention to adopt does not deny the petitioners' standing to seek an adoption of E.M.S. Petitioners seem to assert that they would have standing to adopt E.M.S. but for the agency's refusal to give consent.

The court agrees with petitioners that, in light of *In re Adoption of J.E.F., C.J.U., N.G.F.,* 587 Pa. 650, 902 A.2d 402 (2006), the agency's withholding of consent does not bar petitioners from proceeding with an adoption. "A withheld consent [by the agency] alone does not destroy a party's standing under traditional standing doctrine." *Id.* at 669, 902 A.2d at 413. The trial court is to "determine what role a conferred, or withheld, consent should have upon the adoption proceedings." *Id.* at 667, 902 A.2d at 412. However, "under both the [Adoption] Act and traditional notions of standing, it is not the consent of the agency that determines the preliminary question of standing to be heard under the Adoption Act, but the existence of a substantial, direct

and immediate interest in the proceeding." *Id.* at 672, 902 A.2d at 415. Therefore, the petitioners must also demonstrate that they maintain standing in the traditional sense of the legal phrase.

*In re Adoption of J.E.F.* the court sets forth in great detail how a party is determined to have standing.

"At its most basic level, standing merely 'denotes the existence of a legal interest.' Traditionally, to have standing, a party must be aggrieved—that is, the party must have a substantial interest in the subject matter of the litigation that must be direct and immediate, rather than remote, and which distinguishes his interest from the common interest of other citizens.

"With respect to this requirement of being aggrieved, an individual can demonstrate that he is aggrieved if he can establish that he has a substantial, direct and immediate interest in the outcome of the litigation in order to be deemed to have standing. An interest is 'substantial' if it is an interest in the resolution of the challenge which 'surpasses the common interest of all citizens in procuring obedience to the law.' Likewise, a 'direct' interest mandates a showing that the matter complained of 'caused harm to the party's interest,' *i.e.,* a causal connection between the harm and the violation of law. Finally, an interest is 'immediate' if the causal connection is not remote or speculative." *Id.* at 668, 902 A.2d at 412-413. (citations omitted)

Determining whether the petitioners have standing is paramount to whether the adoption may proceed.

Prior court decisions have expanded the rights of grandparents and aunts or uncles to adopt children, even

where the rights of the biological parents have been terminated. See *In re Adoption of J.E.F.* However, the support for standing in those actions stems from the blood relationship that exists even after the termination of parental rights. "[F]or purposes of the mere preliminary question of standing, a child's blood aunt and uncle who indicate an interest in adoption clearly have an interest which surpasses that of the ordinary, unrelated citizen." *In re Adoption of J.E.F.,* at 671, 902 A.2d at 414. In the present action, petitioners bear no blood relationship to E.M.S.

Where third parties seek to adopt, standing is conferred if the proposed adopters can establish that they stand in loco parentis to the child. *In re Adoption of Baby Boy Wims,* 454 Pa. Super. 498, 502, 685 A.2d 1034, 1036 (1996), citing *Chester County CYS v. Cunningham,* 431 Pa. Super. 421, 636 A.2d 1157 (1994), *affirmed,* 540 Pa. 258, 656 A.2d 1346 (1995). A person who acts in loco parentis: "puts himself into the situation of assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of 'in loco parentis' embodies two ideas: first, the assumption of a parental status, and second, the discharge of parental duties." *In re Wims,* at 502, 685 A.2d at 1036, citing *Cardamone v. Elshoff,* 442 Pa. Super. 263, 275, 659 A.2d 575, 581 (1995).

The instant action before the court bears significant resemblance to the matter before the Superior Court in *Wims.* The Nelsons, who were serving as foster parents to baby boy Wims, filed an intent to adopt petition five months after the child was removed from their care and

placed with another family. At the time of the filing of the petition to adopt, the Nelsons no longer had physical custody of the child, they had no contact with the child and they were no longer responsible for any decisions made on the child's behalf. For these reasons the Superior Court found that the Nelsons "had no parental relationship with the child." *Id.* at 502, 685 A.2d at 1036. Of further significance in the *Wims* case was the time delay between the removal of the child from the Nelson home and their filing of the intention to adopt as well as the record being devoid of any attempts by the Nelsons to contest the removal of the child by the agency at the time of the replacement.

When E.M.S. was in the physical custody of the petitioners, Mr. and Mrs. D. obviously enjoyed the status of acting in loco parentis. However, upon the removal of E.M.S. by the agency, the parental relationship with E.M.S. ceased as did their status. At the time the petitioners filed their report of intention to adopt, they, as third parties, were not acting as in loco parentis and do not have standing to proceed in the adoption.

During the hearing, petitioners introduced as exhibits correspondence from two of the foster daughters in their home at the time E.M.S. was removed.[1] See petitioners exhibit nos. 2 and 3. These exhibits, dated April 21, 2007, assert that any reports made by the daughters to their caseworker were only made in an attempt to re-unify with their biological father. The court presumes that the correspondence was introduced to evidence no wrong-

---

1. The correspondence was sent to counsel for the petitioners, Mr. Andrew Shaw.

doing on the part of petitioners as to E.M.S. These documents are of little consequence in this action. Petitioners are attempting to litigate the removal of E.M.S. from their home over a year ago. The time to address this issue has passed and cannot be reopened. *Why* E.M.S. was removed from the home is not as important as the fact that petitioners were not acting as in loco parentis at the time of the filing of the report of intention to adopt.

This court cannot expand *In re Adoption J.E.F.* to bestow foster parents with standing to proceed in an adoption where they no longer have physical custody of the child, they are not blood relatives to the child and they do not stand in loco parentis to the child. While I can sympathize with the fact that the petitioners do feel an emotional connection to E.M.S., the time frame in which to resolve their separation from E.M.S. has long passed. Petitioners do not have standing to adopt and their report of intention to adopt should be dismissed. Therefore, the court enters the following order:

## ORDER

And now, January 7, 2008, upon the completion of a hearing conducted on October 18, 2007, and review of the briefs submitted in support of, and in opposition to, the adoption of E.M.S. [redacted], the court hereby determines that the petitioners, T. D. and R. D. [redacted], do not have standing to proceed in the adoption of E.M.S. [redacted]. Therefore, the court orders that the report of intention to adopt in the above captioned case be dismissed.