J-S35013-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| B.S.C., S.P.M. AND L.A.M. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| A.R.W., D.J.W., AND J.M.W. | |
| APPEAL OF:  D.J.W. AND J.M.W. | No. 115 MDA 2018 |

Appeal from the Order Entered December 15, 2017
In the Court of Common Pleas of York County
Civil Division at No(s): 2014-FC-001113-03

BEFORE:  BENDER, P.J.E., PANELLA, J., and MURRAY, J.

MEMORANDUM BY BENDER, P.J.E.:                     **FILED AUGUST 28, 2018**

D.J.W. and J.M.W. ("Maternal Grandparents") appeal from the December 15, 2017 order sustaining the preliminary objections filed by A.R.W. ("Mother") and dismissing Maternal Grandparents' underlying complaint for custody of A.R.C. ("Child") (born in May of 2014).[1]  After careful review, we affirm.

We glean the following relevant facts and procedural history from the record.  Mother and B.S.C. ("Father")[2] are the biological parents of Child.  Both were minors at the time of Child's birth.  S.P.M. and L.A.M. ("Paternal Grandparents") volunteered to care for Child at birth, as Mother and Father were still in high school, and Maternal Grandparents were unable to care for

---

[1] An amended order, dated January 16, 2018, was issued by the trial court to correct two typographical errors in the original order.

[2] Father is not represented by counsel in this case.

Child, at the time, due to J.M.W.'s health issues. N.T. Hearing, 12/13/17, at 61.

On June 17, 2014, the trial court approved a custody stipulation entered into by Mother, Father, Paternal Grandparents and Maternal Grandparents. Pursuant to the terms of the stipulation, full legal custody and primary physical custody of Child was awarded to Paternal Grandparents and limited visitation rights were granted to Father.[3] The stipulation also initially awarded Mother visitation rights at the home of Paternal Grandparents until August 1, 2014. Commencing August 1, 2014, Mother's visitation schedule ceased, and Mother was granted partial physical custody, as proscribed in the stipulated order. *See* Custody Stipulation, 6/17/14. No custody rights were awarded to Maternal Grandparents. *Id.*

Since Mother resided with Maternal Grandparents from Child's birth, up until March of 2017, all of Mother's visitations with Child during that period of time took place at Maternal Grandparents' home. Mother was forced to move out of their home, however, following an incident in March of 2017, where police were called after Mother assaulted J.M.W. N.T. Hearing at 7.[4] Despite Mother's moving out of their residence, Maternal Grandparents have continued

_____

[3] Father moved out of Paternal Grandparents' home prior to Child's birth and has had minimal contact with Child. He has not exercised his visitation rights since Child was two months of age. N.T. Hearing at 61; *see also* Paternal Grandparents' Brief at 3.

[4] Mother currently resides with her boyfriend and his family. *Id.*

to enjoy visits with Child on a weekly basis, with the consent of Paternal Grandparents.

On September 6, 2017, Maternal Grandparents filed a complaint for custody, in which they sought shared legal and partial physical custody of Child. In their complaint, Maternal Grandparents allege that "unsafe and addictive behaviors of Mother and Father are what initially led to the agreement for Paternal Grandparents to have primary custody of [C]hild[,]" and claim that these behaviors have continued. Complaint, 9/6/17, at 2.[5] Maternal Grandparents further aver that the only reason that the custody stipulation did not delineate a specific custodial schedule for them is that Mother was a minor and resided with them at the time. *Id.*

On October 24, 2017, Mother filed preliminary objections to the custody complaint and argued that Maternal Grandparents do not have standing to pursue any form of custody under Sections 5324 and 5325 of the Custody Act (23 Pa.C.S. §§ 5324-5325). In support of her claim, Mother asserted that Maternal Grandparents were not awarded any custody rights to Child in the June 13, 2014 Stipulation, nor do they stand *in loco parentis* to Child. After hearing testimony from Mother, Maternal Grandparents, and Paternal Grandmother at a hearing on December 13, 2017, the trial court sustained

---

[5] At the hearing on her preliminary objections, Mother admitted to substance abuse (*i.e.*, marijuana) in the past. N.T. Hearing at 8. Mother further testified that she has been diagnosed with borderline personality disorder, depression, and ADHD and stated that she has managed these conditions with medication and by regularly attending therapy. *Id.* at 9.

- 3 -

Mother's objections and dismissed the custody complaint. Maternal Grandparents subsequently filed a motion for reconsideration, which the court denied on January 16, 2018.

On January 12, 2018, Maternal Grandparents filed a timely notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Maternal Grandparents now present the following issues for our review:

> I. Did the trial court err when it [sustained Mother's] preliminary objections?
>
> II. Did the trial court commit an abuse of discretion or an error of law by ruling that [Maternal Grandparents] did not have standing?
>
> III. Did the trial court commit an abuse of discretion or an error of law by not acknowledging that [Maternal Grandparents] have been captioned parties since origination of this action and have had regular periods of custody of [] Child since removal from their home?
>
> IV. Did the trial court commit an abuse of discretion or an error of law by failing to acknowledge the status of [Maternal Grandparents] as *in loco parentis* during Mother's periods of custody?

Maternal Grandparents' Brief at 3 (unnecessary capitalization omitted).

Our review of a challenge to a trial court's decision to grant preliminary objections is guided by the following standard:

> Preliminary objections, the end result of which would be dismissal of a cause of action, should be sustained only in cases that are clear and free from doubt. The test on preliminary objections is whether it is clear and free from doubt from all of the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish his right to relief. To determine whether preliminary objections have been properly sustained, this court must consider

as true all of the well-pleaded material facts sets forth in appellant's complaint and all reasonable inferences that may be drawn from those facts.

**Butler v. Illes**, 747 A.2d 943, 944 (Pa. Super. 2000) (quoting **Chester County Children and Youth Services v. Cunningham**, 636 A.2d 1157, 58 (Pa. Super. 1994)) (internal citations omitted).

We further note:

A trial court's determination of standing will not be disturbed by our Court absent an abuse of discretion or an error of law. It is well established that persons other than natural parents are third parties for purposes of custody controversies. Third parties will be found to have standing only when they establish that they have a *prima facie* right to custody.

**Id.** Moreover,

[i]n the area of child custody, principles of standing have been applied with particular scrupulousness because they serve a dual purpose: not only to protect the interest of the court system by assuring that actions are litigated by appropriate parties, but also to prevent intrusion into the protected domain of the family by those who are merely strangers, however well-meaning.

**D.G. v. D.B.**, 91 A.3d 706, 708 (Pa. Super. 2014).

Section 5324 of the Custody Act identifies persons who have standing to seek child custody:

**§ 5324. Standing for any form of physical custody or legal custody.**

The following individuals may file an action under this chapter for any form of physical custody or legal custody:

(1) A parent of the child.

(2) A person who stands *in loco parentis* to the child.

(3) A *grandparent* of the child who is not *in loco parentis* to the child:

(i)     whose relationship with the child began either with the consent of a parent of the child or under a court order;

(ii)    who assumes or is willing to assume responsibility for the child; and

(iii)   when one of the following conditions is met:

(A)    the child has been determined to be a dependent child under 42 Pa.C.S. Ch. 63 (relating to juvenile matters);

(B)    the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity; or

(C)    the child has, for a period of at least 12 consecutive months, resided with the grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, in which case the action must be filed within six months after the removal of the child from the home.

23 Pa.C.S. § 5324 (emphasis added).

Section 5325 of the Child Custody Act further provides:

**§ 5325.    Standing for partial physical custody and supervised physical custody.**

In addition to situations set forth in section 5324 (relating to standing for any form of physical custody or legal custody), grandparents and great-grandparents may file an action under this chapter for partial physical custody or supervised physical custody in the following situations:

(1)    where the parent of the child is deceased, a parent or grandparent of the deceased parent may file an action under this section;

(2)    where the relationship with the child began either with the consent of a parent of the child or under a court order and where the parents of the child:

>           (i)      have commenced a proceeding for custody;
>                    and
>
>           (ii)     do not agree as to whether the grandparents
>                    or great-grandparents should have custody
>                    under this section; or
>
>   (3)     when the child has, for a period of at least 12
>           consecutive months, resided with the grandparent or
>           great-grandparent, excluding brief temporary
>           absences of the child from the home, and is removed
>           from the home by the parents, an action must be filed
>           within six months after the removal of the child from
>           the home.

42 Pa.C.S. § 4325.

Instantly, Maternal Grandparents assert that they possess the requisite standing to pursue custody, partial custody, and/or visitation of Child under Sections 5324 and 5325 of the Custody Act. *See* Maternal Grandparents' Brief at 14. Maternal Grandparents claim to have stood *in loco parentis* to Child, as they allege to have provided the majority of her care when she resided in their home. *Id.* at 14, 17.[6] Alternatively, Maternal Grandparents argue that, should they be found to not have acted *in loco parentis*, they are grandparents "whose relationship with [Child] started with the consent of the parents,

---

[6] D.J.W. testified that he and his wife "[c]ooked, fed, cleaned, bathed, [and did] pretty much everything that was required[]" for Child. N.T. Hearing at 30. He also stated that they did these things not just because they wanted to be grandparents, but also because Mother "didn't do it most of the time." *Id.* at 31. "[U]sually[,] she was either asleep when [Child] was up in the morning and wouldn't get up, so we had to take care of her, not that we really minded, or she was on her phone or just laying around [not] doing much of [anything]." *Id.* Regarding Child's care, J.M.W. added: "It took a lot. We did all the meals. Sometimes [Mother] would help with baking things like cookies or muffins, but we did the planning of the meals and everything like that. When she was little, I would feed her … baby food … and milk…." *Id.* at 44-45.

continued with consent of the party having sole legal custody of [Child], [] are willing to assume responsibility for [Child], and [Child] resided with them continuously from birth until May 2017[,] on weekends and each Tuesday[,]" in accordance with section 5324(3). *Id.* at 17-18. After careful review, we deem Maternal Grandparents' claims to be wholly without merit.

Pursuant to section 5324(2), a person who stands *in loco parentis* to the child has standing to pursue any form of custody. 23 Pa.C.S. § 5324(2).

> The term *in loco parentis* literally means 'in the place of a parent.'" ***Peters v. Costello***, … 891 A.2d 705, 710 ([Pa.] 2005) (citing Black's Law Dictionary, 791 (7th Ed. 1991)). A person stands *in loco parentis* with respect to a child when he or she "assum[es] the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of *in loco parentis* embodies two ideas; first, the assumption of a parental status, and second, the discharge of parental duties." ***Id.*** (quoting ***T.B. v. L.R.M.***, … 786 A.2d 913, 916-17 ([Pa.] 2001))…. "[I]*n loco parentis* status cannot be achieved without the consent and knowledge of, and in disregard of[,] the wishes of a parent." ***E.W. v. T.S.***, 916 A.2d 1197, 1205 (Pa. 2007) (citing ***T.B.***, *supra*).

***K.W. v. S.L.***, 157 A.3d 498, 504-505 (Pa. Super. 2017).

Contrary to Maternal Grandparents' claim that they have provided the majority of care for Child, the record clearly establishes that, in accordance with the court-approved custody stipulation entered into by all parties, Paternal Grandparents have exercised sole legal custody and primary physical custody of Child since her birth. We acknowledge that Maternal Grandparents provided financial support for both Mother and Child while Mother was residing with them, and that they assisted in caring for Child during Mother's periods

of visitations. *See* N.T. Hearing at 6, 14-15, 30-31, 44-45. However, we conclude that their acts have been more consistent with the acts of loving grandparents wanting to assist their daughter with their grandchild, rather than showing an intent to assume all of the rights and responsibilities of parenthood. *See D.G. v. D.B.*, 91 A.3d 706 (Pa. Super. 2014) (refusing to recognize *in loco parentis* status despite the fact that the grandmother financially supported child, provided occasional shelter, meals, laundry, and transportation to and from medical appointments).

Moreover, it is clear that a third party cannot place himself or herself in *in loco parentis* status in defiance of the parents' wishes. *See E.W. v. T.S.*, *supra.* (stating "the law provides that *in loco parentis* status cannot be achieved without the consent and knowledge of, and in disregard of the wishes of a parent"). Here, Mother has expressly stated that she does not want her parents to have custodial time with Child because she doesn't think they are fit to be parents. N.T. Hearing at 8. After careful review of the record, we discern no error of law or abuse of discretion, on the part of the trial court, in concluding that Maternal Grandparents lacked *in loco parentis* standing to pursue custody in this matter.

Next, we examine whether Maternal Grandparents have standing to assert a claim for custody under section 5324(3). There is no dispute that Maternal Grandparents are grandparents whose relationship began with Mother's consent, and that they are willing to assume responsibility for Child. *See* N.T. Hearing, 12/13/17, at 66. Thus, the criteria of subsections

5324(3)(i) and (ii) have been met. With regard to subsection 5324(3)(iii), however, the trial court found that none of the necessary elements for establishing standing under subsections (iii)(A), (iii)(B), or (iii)(C) have been satisfied. ***See*** Amended Trial Court Opinion ("TCO"), 1/16/18, at 1-5.

First, Child has not been adjudicated dependent, pursuant to section 5324(3)(iii)(A). ***See*** N.T. Hearing at 66. Next, the trial court found Child not to be "substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity[,]" pursuant to section 5324(3)(iii)(B). TCO at 2. In support of its conclusion, the trial court opined:

> While the [c]ourt has heard testimony regarding Mother's use of marijuana in the past and conduct in the past, the issue is [whether] the child [is] at substantial risk today.
>
> The primary custodians of [Child], [P]aternal [G]randparents, testified, and their counsel has confirmed on their behalf, that they do not believe [Child] is at substantial risk at this time. Paternal [G]randmother stated if she did believe that [Child] was at risk, she would not turn [her] over to Mother. [Paternal] Grandmother also testified that she visited [] Mother's home to ensure it was appropriate and safe for [Child] before allowing Mother to resume overnight custody of [Child].
>
> The [c]ourt did hear testimony concerning Mother's diagnosis for various mental health issues and testimony regarding the need for Mother to have been hospitalized for an inpatient stay at one point in previous years. Testimony … substantiated that Mother has been receiving mental health treatment and remains compliant with her mental health treatment and that her diagnosed mental health issues do not prevent her from properly and safely parenting her child at this time.
>
> So based on the totality of the testimony, the [c]ourt does not believe [Child] is substantially at risk and, therefore, [M]aternal [G]randparents do not have standing under that section of the law.

*Id.* at 2-3.

Lastly, the court turned to the final possible criteria under section 5324, as well as the identical subsection under section 5325, to determine whether Child has resided with Maternal Grandparents for a period of at least twelve consecutive months, "excluding brief, temporary absences of the child from the home, and is removed from the home by the parents, in which case the action must be filed within six months after the removal of the child from the home." *Id.* at 3. *See also* 23 Pa.C.S. § 5324(3)(iii)(C); 23 Pa.C.S. § 5325(3).

> The [c]ourt believes, based on the testimony, that the action was filed within six months of when Mother left the home of [M]aternal [G]randparents. That's not an issue of concern to the [c]ourt. The court does have concern, though, given that the statute states 12 consecutive months but for brief, temporary absences.
>
> [Child] has primarily been residing with Paternal Grandparents and has had brief visits with Mother at Maternal [G]randparents' home per a prior order of the [c]ourt. [The court believes] there's some question as to whether [Child] being at [M]aternal [G]randparents' home with the Mother would meet the definition of brief temporary absences or not.
>
> The [c]ourt believes that on that [basis] alone[,] [Maternal Grandparents] would fail, but even if the [c]ourt was accepting that the grandparents met the 12 consecutive months requirement of [section] 5324 or [section] 5325, that … requirement also says that the child was removed from the home by the parents.
>
> The testimony made it clear that Mother was forced to cease her residence in [Maternal] [G]randparents' home not by choice but by a decision of the grandparents. And the [c]ourt certainly understands the basis for that decision, but the [c]ourt interprets the statutory requirement as that the parent chooses to remove the child from the grandparents' custody, and the [c]ourt doesn't believe that's the case here, that instead, the parent, Mother in

this instance, was required to leave the grandparents' home. And since the custody was with her, the child was also removed by the decision of the grandparents to have Mother removed from their home.

*Id.* at 4-5. The trial court concluded that Maternal Grandparents lack standing and, therefore, sustained Mother's preliminary objections and dismissed the underlying complaint. We discern no error of law or abuse of discretion in the court's decision.

Accordingly, we affirm the trial court's December 15, 2017 order sustaining the preliminary objections filed by Mother and dismissing Maternal Grandparent's complaint for custody of Child.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/28/2018